JOHN E. LANCASTER *et al.* Appellants, *vs.* FRANK G. SPRINGER *et al.* Appellees.

*Opinion filed April 23, 1909.*

1. TRUSTS—*a resulting trust does not arise from absolute deed.* A deed absolute in terms and without condition or reservation does not raise a resulting trust in favor of the grantor, and if there is any agreement by the grantee to hold the property in trust for the grantor the trust is an express one and is invalid unless manifested in writing.

2. LACHES—*what is such laches as bars setting aside deeds.* A bill by the heirs of a grantor to set aside deeds nearly forty years old cannot be maintained, where the only ground upon which they could have been avoided by the grantor is that the grantee was the grantor's trusted agent and that the deeds were voluntary or made upon inadequate consideration, there being no actual fraud or want of capacity, and where the grantor, up to his death, twenty-four years after making the deeds, acquiesced in the possession and use of the property by the grantee.

3. LIMITATIONS—*claims for money received as agent are subject to the Statute of Limitations.* To exempt a trust from the operation of the Statute of Limitations it must be a direct trust, belonging exclusively to the jurisdiction of a court of equity; but

constructive trusts, arising from partnerships, agencies and the like, and claims for money received as agent, are subject to the bar of the statute.

4. SAME—*mere silence is not concealment of a cause of action.* The concealment of a cause of action which will prevent the operation of the Statute of Limitations must consist of affirmative acts or representations designed to prevent, and which do prevent, the discovery of the cause of action; and mere silence of the party liable is not such concealment.

5. PLEADING—*allegation that party received money as trustee is a mere conclusion.* An allegation in a bill for accounting that a certain person received the money *as trustee* is a mere conclusion of the pleader, which is not admitted by a demurrer to the bill.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

LESLIE A. NEEDHAM, (CURTIS H. REMY, of counsel,) for appellants:

George A. Springer, as agent and confidential adviser, uninterruptedly, for forty years, occupied a relation of confidence and trust, and any act of Springer inconsistent with his duties as agent, attorney in fact and confidential adviser, by which he acquired, directly or indirectly, any interest in the money or lands, constitutes him a trustee *ex maleficio.* *Tyler* v. *Sanborn,* 128 Ill. 136; Perry on Trusts, sec. 206; *Smith* v. *Wright,* 49 Ill. 403; *Fairman* v. *Bavin,* 29 id. 75; *Davis* v. *Hamlin,* 108 id. 39.

George A. Springer cannot be presumed to have dealt in the lands of his principal ignorant of the duty the law imposed upon him by reason of this confidential relation. *Dennis* v. *McCagg,* 32 Ill. 429.

Where the relationship which afforded opportunity for the fraudulent act of a trustee continues uninterrupted, the principal being old and infirm, for forty years, dominated by the will of his agent, which influence continues up to the death of the principal, he cannot be said to have been guilty of *laches* touching the very matters which were the

subject of the agency and where the principal has no reason to suspicion the integrity of the agent.  2 Perry on Trusts, sec. 865; *Hayden* v. *Stone,* 1 Dur. 396; *Miles* v. *Wheeler,* 43 Ill. 123.

Mere lapse of time will be no bar to establishing a resulting trust if an excuse is given which takes hold of the conscience of the chancellor, as where the fraud is concealed and is such as renders it inequitable that the bar should be interposed.  *Harris* v. *McIntyre,* 118 Ill. 275; *Coryell* v. *Klehm,* 157 id. 462; *Henry County* v. *Drainage Co.* 52 id. 299.

Mere lapse of time is only one of many circumstances from which the conclusion of *laches* must be drawn.  *Reynolds* v. *Sumner,* 126 Ill. 58; *Sheldon* v. *Packet Co.* 8 Fed. Rep. 769.

JAMES B. KEOGH, for appellees:

Where it is apparent on the face of the bill that the action is barred by the Statute of Limitations, that defense may be raised by general demurrer.  *Ilett* v. *Collins,* 103 Ill. 74; Story's Eq. Pl. sec. 484.

A general demurrer also raises the defense of *laches,* where *laches* is apparent on the face of the bill.  *Coolidge* v. *Rhodes,* 199 Ill. 32.

A demurrer admits the truth of matters set forth in the bill only so far as they are relevant and well pleaded.  It does not admit conclusions of law, nor matters of fact which are not alleged and charged with certainty and positiveness; and all intendments are to be taken most strongly against the pleader.  Story's Eq. Pl. sec. 452; *Lawrence* v. *Traner,* 136 Ill. 484.

There could be no express trust of this real estate in the absence of evidence, in writing, sufficient to take the case out of the Statute of Frauds.  *Monson* v. *Hutchins,* 194 Ill. 431; *Mayfield* v. *Forsyth,* 164 id. 35.

There could be no resulting trust in the grantor's favor under the deed from Lancaster to Springer. This deed recited the payment of a consideration by the grantee, and the presumption of a resulting trust was thereby rebutted. *Biggins* v. *Biggins,* 133 Ill. 211; *Kimball* v. *Walker,* 30 id. 482; *Mayfield* v. *Forsyth,* 164 id. 35; *Myers* v. *Myers,* 167 id. 61.

If the transaction be considered as a gift, pure and simple, the bill discloses no such fiduciary relationship of Springer to Lancaster as would, in itself, warrant a court of equity in avoiding a gift to Springer or convert him into a trustee *ex maleficio,* in the absence of allegations in the bill of mental·or physical debility on the part of Lancaster, or misrepresentation, undue influence or other misconduct on the part of Springer at the time the transaction was entered into. *Uhlich* v. *Muhlke,* 61 Ill. 511; *Brown* v. *Brown,* 154 id. 35.

Even if Springer's relationship to Lancaster had been fiduciary, in the narrower and technical sense, at the time of the conveyance, and the conveyance one in the nature of a gift from Lancaster, the transaction was not void *ab initio,* but was voidable, merely, at Lancaster's election. Perry on Trusts, (5th ed.) sec. 195, note *b; Thomas* v. *Whitney,* 186 Ill. 225; *Herr* v. *Payson,* 157 id. 244; *Sloan* v. *Graham,* 85 id. 27; *Munn* v. *Burgess,* 70 id. 604.

Such a transaction, if challenged at all, should be challenged seasonably, and acquiescence and lapse of time make the trustee's title good. Perry on Trusts, (5th ed.) secs. 195, 198.

Mr. JUSTICE DUNN delivered the opinion of the court:

Appellants and others filed their bill in the circuit court of Cook county to establish a resulting or constructive trust as to certain lands in Cook county, and for an accounting, discovery and general relief. A demurrer having been sustained to the original bill, it was amended. The amended

bill was demurred to and the demurrer was sustained. The amended bill was dismissed for want of equity, and an appeal has been taken to this court.

The amended bill alleges that Nimrod Lancaster was born in 1810, and came to Chicago in 1850 with about $1000 but without business experience. He went to California, where he accumulated about $5000, and returned to Chicago in 1852. He left this money with George A. Springer and authorized him to purchase, bargain, sell and convey any real estate in the name of Lancaster. From 1852 to 1871 Lancaster was engaged in mining in various places and accumulated a large fortune, which he turned over to Springer for the purchase of real estate. In 1872 he executed a power of attorney to Springer to buy or sell and convey, in the name of Lancaster, any real estate or personal property Springer might deem proper; to borrow money and execute notes, and mortgages to secure them, in Lancaster's name, and to lease lands and houses and collect rents. Lancaster then went to the diamond fields of South Africa, where he secured $40,000 worth of uncut diamonds. He then went to South Dakota, where he located valuable mining claims. In 1880 Springer organized the Lancaster Mining Company, with $1,500,000 capital, to operate and exploit Lancaster's mining claims, the title to which Springer caused to be conveyed to said mining company. One-third of the capital stock of said company was issued to Springer and the rest to others, who paid nothing for it except about $30,000 expended in purchasing and installing machinery. Lancaster received no consideration for the conveyance of his mining claims to the corporation, and the stock issued to Springer was, in fact, held in trust for Lancaster. From 1880 to 1889 a great deal of ore was shipped from the mines to Springer for which he never accounted. In 1889 Lancaster sustained a severe and permanent injury to one of his hips through an accident, and about a year later went to San Diego, California, to live.

In the fall of 1893 he was run down by a horse and carriage in crossing a street and so injured that his lower limbs were paralyzed, and until his death, in June, 1895, he remained in an enfeebled and helpless condition and was moved about in a wheel chair. After his death his last will and testament was admitted to probate in the probate court of Cook county. By it he disposed of his estate to thirteen persons, two of whom are the appellants. Springer died testate in 1899, leaving the residue of his estate, after making certain specific devises, in trust for the payment of his debts, the payment of the income to his widow and children during his widow's life, and after her death for distribution among his children. .

It is alleged that in 1871 Springer procured a conveyance from Lancaster to himself, for the nominal consideration of one dollar though he really paid nothing, of a certain five-acre tract, of which he took the title really as trustee for Lancaster; that he afterward exchanged the west half of this tract for a two and one-half acre tract adjoining the east half, and these latter two tracts now constitute block 2 in Springer & Lancaster's subdivision, the title to which, except the south ninety feet thereof, is vested in the trustees under the will of George A. Springer in trust for the devisees of Nimrod Lancaster, which trustees are liable to account for all rents received by them or by George A. Springer in his lifetime, and for the amount realized from the sale of the south ninety feet of said block, being in excess of $50,000. It is also alleged that Springer procured from Lancaster, in 1872, a warranty deed of certain lots in N. Lancaster's subdivision for a purported consideration of $53,707.50, to which he took title as trustee for the benefit of Lancaster, and that the trustees under his will should account for all moneys received from the sale of any portion of said real estate and convey to the devisees of Lancaster the portions remaining unsold. The bill alleges that at various dates, running from 1874 to 1894, Springer pro-

cured Lancaster to execute notes, and mortgages on various parts of his real estate to secure the same, for various sums of money, ranging in amounts from $10,000 to $40,000, all of which moneys were received by Springer as trust funds but never accounted for. The bill also alleges that in 1888, 1890 and 1892 Springer advised, and by reason of his fiduciary relation procured, the execution by Lancaster of three long-term leases to Springer's sons covering three parcels of land owned by Lancaster; that thirty-nine residences were afterwards erected on the premises at a cost of $110,000, which amount was paid by Springer out of the funds of Lancaster; that the making of these leases was a scheme of Springer to cause it to appear that the improvements were made and paid for by Springer's sons, the leases each containing a provision for the re-imbursement of the lessees for money so expended, together with a certain percentage of the cost of the buildings in addition, which cost was made to appear to exceed $150,000; also that Springer procured Lancaster to execute certain trust deeds in 1892 and 1894, whereby the leased premises were mortgaged for $113,000, and the proceeds of these mortgages, evidenced by the notes of the lessees, were received by Springer and never accounted for.

The bill seeks to have a resulting or constructive trust declared in the lots described in Lancaster's and in Springer & Lancaster's subdivisions; an accounting of the rents of this real estate and the purchase price of such part as has been sold; of the proceeds of the sale of gold ore shipped by Lancaster to Springer from 1880 to 1889; of the $500,000 worth of stock of the Lancaster Mining Company received by Springer in 1880 and over $5000 received as dividends upon said stock; of rents in excess of $500 per month from Lancaster's real estate collected by Springer, as his agent, from 1852 to 1895; of $155,000 received by Springer on the mortgages procured by him to be executed by Lancaster upon his real estate, and of the loss in con-

nection with the three leasehold estates and the mortgages thereon.

So far as the real estate is concerned, there is no theory on which the bill can be sustained. Lancaster conveyed the premises to Springer by deeds absolute in terms, without condition or reservation. Under such circumstances there can be no resulting or constructive trust in favor of the grantor. (*Mayfield* v. *Forsyth,* 164 Ill. 32; *Biggins* v. *Biggins,* 133 id. 211; *Stevenson* v. *Crapnell,* 114 id. 19.) If there was any agreement to hold in trust it was an express trust, and was invalid because not manifested by writing. (*Monson* v. *Hutchin,* 194 Ill. 431; *Benson* v. *Dempster,* 183 id. 297.) If the deed had been voidable by Lancaster because of the relations between himself and the grantee, his acquiescence in the transaction and in the grantee's possession and use of the property for twenty-four years was sufficient to bar him from maintaining a bill to avoid the deed on that ground. (*Herr* v. *Payson,* 157 Ill. 244; *Benson* v. *Dempster, supra; Brown* v. *Brown,* 154 Ill. 35.) There is no express trust, there is no implied or constructive trust. The only right, if any, which Lancaster ever could have had, was a right to have the deed set aside on account of the relation existing between himself and Springer. The bill contains no allegation of actual fraud in procuring the conveyances. So far as its allegations go, the first deed was a gift and the second a sale for $53,-707.50. To a bill seeking relief against conveyances made under such circumstances, *laches* of the complainant presents a complete defense.

To explain Lancaster's neglect, in his lifetime, to make any effort to compel restitution of the property, it is alleged that from 1852 until his death Springer was Lancaster's trusted, uninterrupted, continuous and lawful agent and attorney in fact and transacted all his business of every kind; that Lancaster never sought or obtained any independent, friendly or legal advice, and was at all times igno-

rant and uninformed as to the title to real estate or the value thereof; that after his first accident, in 1889, he was weakened and emaciated on account of his great age, exposure in camps and enforced confinement, and by reason of such condition was completely subject to and followed the suggestions of Springer and his sons, executing such documents as they presented to him, without knowledge of their contents and without reading them or having them explained to him. There is no pretense that at any time in his life Lancaster was deficient in mental capacity. He was always a successful mining prospector and explorer. His operations covered a wide field and a long time and his ventures were always successful. He never acquired a knowledge of real estate titles or values or concerned himself with investments or financial operations. It is fair to infer from the allegations of the bill that this was because he did not care to give his attention to such affairs but preferred to leave them to others, while he directed his activities to the mining operations in which he found such uniform success. He was frequently in Chicago for visits of longer or shorter duration, and there is nothing in the bill which indicates that he was in any respect, at any time of his life, inferior in intelligence or business capacity to the ordinary man. Nor is there any allegation of any false statement made by Springer to Lancaster, or of any fact indicating that he was misinformed or uninformed as to any of the transactions now complained about. If he made the deeds voluntarily or for an inadequate consideration at Springer's mere request, and was satisfied to let them stand unquestioned, during his lifetime, for twenty-four years, he could not, after that lapse of time, question their validity. Such delay on his part was inexcusable. Much greater reason is there for denying to his devisees the right to attack the deeds thirty-seven years after their execution and many years after the death of both the grantor and grantee.

The remainder of the relief sought by the bill, aside from that which questions the two deeds, is an accounting of various sums of money received by Springer as agent of Lancaster. The allegation of the bill is, in some cases, that he received the money as trustee. This is a legal conclusion which is not admitted by the demurrer. The bill states the manner in which the money was received. The gold ore was shipped to Springer as Lancaster's agent. The moneys received from the various loans came to Springer's hands by virtue of his agency. If any liability was incurred by Springer to Lancaster on account of the transaction concerning the three long-term leases, it was for misconduct as his agent or fraud in procuring the execution of the leases and mortgages. All the claims accrued out of Lancaster's business transacted by Springer as his agent, and they were therefore subject to the operation of the Statute of Limitations. To exempt a trust from the operation of the statute it must be a direct trust, belonging exclusively to the jurisdiction of a court of equity. Constructive trusts, arising from partnerships, agencies and the like, are subject to the statute. *Albretch* v. *Wolf,* 58 Ill. 186; *Quayle* v. *Guild,* 91 id. 378; *Hayward* v. *Gunn,* 82 id. 385.

Lancaster's death terminated the agency, and unless suit was begun within five years after that time the bar of the statute presented a complete defense. The failure of the complainants to learn of the existence of their cause of action does not prevent the operation of the Statute of Limitations. (*Conner* v. *Goodman,* 104 Ill. 365; *Parmelee* v. *Price,* 208 id. 544.) Section 22 of chapter 83 of the Revised Statutes provides that "if a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause

239—31

of action, and not afterwards." In an amendment to the bill it is alleged that the defendants, Frank G. Springer and Charles E. Springer, have refused to allow the complainants to inspect the books of account of G. A. Springer; that it was the duty of the said George A. Springer and of the trustees of his estate to disclose to the complainants all the dealings had with said Lancaster, but that they have concealed said information from the complainants. From the bill it appears that prior to November, 1902, there had been an accounting by Springer's executors and a sum of money paid by them to Lancaster's executors, and the question of the final settlement between the two estates reserved to the final settlement of the Lancaster estate, and that afterward the executors of the Lancaster estate were finally discharged. The concealment of a cause of action which will prevent the operation of the Statute of Limitations must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence by the person liable is not concealment of a cause of action. Such concealment must consist of affirmative acts or representations. (*Fortune.* v. *English,* 226 Ill. 262; *Wood* v. *Williams,* 142 id. 269.) Nothing of the kind appears here. The existence of the cause of action,— the right to an accounting,—was acknowledged. Lancaster's executors,—the proper persons to require the accounting,—receipted for the balance claimed to be due. There is nothing to show any concealment on the part of the Springers. The accounting was a matter of record, of which all persons interested in the estate were bound to take notice. The allegations of the bill are not sufficient to show a fraudulent concealment of the cause of action or to remove the bar of the Statute of Limitations.

The bill showed no equitable ground for relief, and the demurrer to it was properly sustained.

The decree will be affirmed.          *Decree affirmed.*