(No. 22071.—

S. T. JACKSON *et al.* Defendants in Error, *vs.* A. E. ANDERSON *et al.*—(A. E. ANDERSON, Plaintiff in Error.)

*Opinion filed February 23, 1934—Rehearing denied April 6, 1934.*

MILLER & SHAPIRO, W. H. DYER, and JOHN H. BECK-ERS, for plaintiff in error.

JOSEPH TOLSON, JR., and H. H. WHITTEMORE, for defendants in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is a review, upon *certiorari,* of a judgment of the Appellate Court for the Second District affirming a decree of the circuit court of Kankakee county wherein S. T. Jackson and others, as stockholders in the Belt Route Warehouse and Storage Company, a corporation, were complainants and the plaintiff in error, A. E. Anderson, and the corporation, were defendants.

The bill was filed on April 19, 1932, and alleges that the complainants were stockholders of the Belt Route Warehouse and Storage Company, (hereinafter called the company,) and that the suit was brought on behalf of the complainants and all others similarly situated. It alleges that the company was organized on November 17, 1925, under the laws of Illinois, to do a warehouse and storage business, and that the complainants had bought stock at the rate of $100 per share, without saying when or from

whom they bought it. The bill further alleges that on November 27, 1925, the officers of the company, F. L. Shidler and M. J. Jackson, issued to A. E. Anderson certificate No. 7 for fifty shares of common stock and another certificate for fifty shares of preferred stock without receiving in return therefor the sum of $10,000, and that they caused the corporate records to show that said one hundred shares were fully paid but that in fact they were not; that the complainants were unaware of the facts in regard to the issuance of said stock, and did not learn of them until in August or September of 1931. The bill further alleges that several of the complainants made a personal demand on Anderson to return the stock for cancellation, and it proceeds, contrary to the prior allegations of the same bill, to allege that Anderson in March, 1931, at a stockholders' meeting, revealed the fact that he had not paid for the stock. The bill prays that Anderson be compelled to surrender the stock for cancellation, and for general relief.

The answer of Anderson admits that the complainants are stockholders but denies that any except one of them owned any stock at the time of the transactions complained of in the bill, and therefore denies the right of any of the other complainants to any relief. The answer admits that the corporation was incorporated as set forth in the bill. It further admits that on the 27th of November, 1925, Shidler and Jackson, being president and secretary of the company, issued the certificates mentioned to Anderson and admits that he did not pay for the stock in cash. The answer denies all of the other material allegations of the bill, and sets up limitations, *laches,* estoppel and acquiescence, and prays the same advantage as if he had demurred. It also states that the complainants had an adequate remedy at law.

By an amendment to the answer Anderson set forth in full the terms of a certain agreement between himself,

Shidler and Jackson which preceded the formation of the corporation in question, and under the terms of which, as afterwards modified, Anderson obtained the certificates in question. The substance of this agreement, which was made more than six months prior to the formation of the corporation, and the substance of the transactions preceding the formation of the corporation, are as follows:

Prior to April 18, 1925, Shidler and Jackson approached Anderson with a proposition for making a profit through the purchase and sale of certain property referred to herein as the warehouse property. In the spring of 1925, prior to the 28th of April in that year, Shidler and Jackson called on Anderson and told him that one of them had an option on the warehouse property under which it could be purchased within a limited time for the sum of $45,000, payable $15,000 in cash and the balance of $30,000 by note and first trust deed on the property. They informed Anderson that they thought it possible to make a deal with a reputable Chicago concern whereby they might sell the property for $75,000, and the proposition which they made to Anderson was that he should furnish the necessary $15,000 for buying the property; that Shidler would take title to the property and execute the $30,000 note and trust deed, at the same time placing a warranty deed from himself to Anderson in escrow for Anderson's protection in his investment of $15,000; that Shidler and Jackson should proceed to try to sell the property for $75,000, and that, if successful, Anderson's $15,000 should be returned to him together with a third of the profit on the deal, which would amount to $10,000 for his share, and that all of the necessary expenses should be divided among the three of them. The agreement further provided that if the sale to the Chicago concern could not be made Shidler and Jackson would organize a corporation for the purpose of conducting a public warehouse with a capital stock of $100,000, of which $50,000 should be preferred and $50,000 com-

mon. The agreement further provided, in the form of an option, that if Shidler and Jackson should within ninety days pay to Anderson the sum of $15,000 which he had invested in the deal, and in addition thereto give him $5000 of preferred stock and $5000 of common stock of the corporation, he would convey the warehouse property to such person or corporation as they might designate. The deal with the Chicago parties fell through and the matter dragged along for more than six months. It was in such condition that Anderson might, had he wished, have refused to perform the agreement because the option time had expired. However, in the fall of 1925, on November 17 of that year, Shidler and Jackson caused the company to be organized. They departed from the exact terms of the agreement and incorporated it for $150,000 instead of $100,000, of which $125,000 was common stock and $25,000 was preferred stock. They transferred the warehouse property to the corporation at a value of $115,000 less $30,000 encumbrance, taking $85,000 of common stock for themselves. They sold some of the preferred stock, paid Anderson back the $15,000 he had invested and delivered to him the two certificates above mentioned, one for $5000 par value of common and the other for $5000 par value of preferred. They also paid him $550 interest on his money during the time it had been invested.

The trial court entered a decree requiring Anderson to pay the corporation $10,000 within thirty days from the date of the decree, and that in the alternative his certificates for $5000 preferred stock and $5000 common stock be declared void and canceled. This decree has been affirmed by the Appellate Court, and the cause is now before us on *certiorari,* as above stated.

It is contended that the complainants have an adequate remedy at law, that the action is barred by the Statute of Limitations, that the complainants are guilty of *laches,* that they are estopped from bringing suit, that there was

no proper demand made upon the directors to bring suit, that the transaction has been ratified by the complainants, that the decree fails to place the defendant *in statu quo*, that the findings in the decree are insufficient to warrant the relief granted, and that there is a variance between the bill and the decree. It will be unnecessary to consider these questions in detail.

It is an elementary and long established rule that if a party accepts the provisions of a contract which are of advantage to him he will be bound by the provisions which purport to be obligatory on him, and that if there is any right of rescission of that contract it must be exercised as to all of it. The contract must stand or fall as a whole, and no one may retain the consideration, or a part of it, and refuse to be bound by the contract or a part of it. (*Kellogg & Co.* v. *Turpie,* 93 Ill. 265; *Bollnow* v. *Novacek,* 184 id. 463; *Babcock* v. *Farwell,* 245 id. 14; *Rigdon* v. *Walcott,* 141 id. 649; *Mortimer* v. *McMullen,* 202 id. 413; *Dunbar* v. *American Telephone Co.* 224 id. 9.) Whatever may be the relation between the parties, the right of rescission of a contract can be exercised only upon a return of the consideration, and the return, or an offer to make a return, must be alleged in the bill. *Babcock* v. *Farwell, supra.*

It is said that Anderson need not be placed *in statu quo* because he has received a return of the $15,000 investment which he made in the property, which is no answer as a matter of law, for the reason that it was his property and he had a legal right to have it back, regardless of its value and regardless of what he paid for it, if the decree takes from him the consideration which he received. It is argued that he paid nothing for his stock, which is certainly not true, as he did deliver the title to the warehouse property, and it was some consideration, whether much or little being immaterial so long as it was a sufficient consideration to sustain the original transaction.

It is urged by defendants in error that Anderson was a promoter of the corporation and therefore a trustee for it, so that he could not make a secret profit in connection with its organization. This contention is neither sustained by the allegations of the bill nor the findings of the decree. In the bill there is no allegation, and in the decree there is no finding, that Anderson had anything to do with the formation of the corporation. On the contrary, it appears that the corporation was caused to be formed by Shidler and Jackson. It is further apparent from the allegations of the bill and the findings of the decree that the property was not purchased primarily for the corporation but was purchased for the purpose of re-sale in a lawful manner and pursuant to a lawful agreement and option. That agreement was allowed to expire by its own terms, and after its expiration Anderson agreed to accept stock in a corporation different from the one contemplated by the original agreement. At the time the corporation was formed Anderson was not standing in any position of trust to it whatever. He was not bound to transfer the property to the corporation but could have refused to do so. So far as the record shows, he was dealing with the persons who formed the corporation, and with the corporation itself, at arm's length, making a deal more advantageous to the corporation than the one originally contemplated, and giving up his interest in the warehouse property for $10,000 worth of stock in a corporation organized for $150,000 instead of one organized for $100,000 as contemplated by the agreement. There is no allegation in the bill nor any finding in the decree from which it could be inferred that there was anything fraudulent or illegal in Anderson's transaction with this company.

As noted above, the bill was not filed until seven years after the transaction in question, and any cause of action at law in connection with it is therefore barred by the Statute of Limitations. (*Knight* v. *St. Louis, Iron Moun-*

*tain and Southern Railway Co.* 141 Ill. 110; *Mowatt* v. *City of Chicago,* 292 id. 578; *Parmalee* v. *Price,* 208 id. 544.) Defendants in error say that they did not learn of the existence of the alleged cause of action until about a year prior to filing the bill. This does not prevent the running of the statute, however, as there is neither allegation nor proof of any fraudulent concealment. (*Parmalee* v. *Price, supra; Lancaster* v. *Springer,* 239 Ill. 472; *Keithley* v. *Mutual Life Ins. Co.* 271 id. 584.) Mere silence of the defendant and mere failure on the part of the complainant to learn of a cause of action do not amount to such fraudulent concealment. (*Fortune* v. *English,* 226 Ill. 262; *Lancaster* v. *Springer, supra; Parmalee* v. *Price, supra.*) Furthermore, we have held that good faith and reasonable diligence are essential elements in asking for relief from a court of equity. (*LeGout* v. *LeVieux,* 338 Ill. 46.) There is no showing of any reason why the complainants could not have learned in 1926 of the facts which they claimed to have learned in 1931. There is no showing of any diligence to learn such facts, and it is hardly consistent with good faith to hold a valuable piece of property through the economically fat years, and then, during times that are economically lean, seek to repudiate the deal whereby it was acquired. In this state of the record no present amendment or offer to return property could be of any avail to the complainants.

There are other sufficient reasons for a reversal of this decree apparent in the record, but it will be unnecessary for us to consider them.

It is ordered that the judgment of the Appellate Court affirming the decree of the circuit court of Kankakee county be reversed and the cause be remanded to the circuit court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*