## Rowena Mosby, Plaintiff-Appellant, v. Michael Reese Hospital, Defendant-Appellee.

### Gen. No. 49,235.

First District, Third Division.

June 11, 1964.

Arthur S. Gomberg, of Chicago (Samuel Nineberg, of counsel), for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Walter W. Ross, Jr., Herbert C. Loth, Jr., and Thomas K. Peterson, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The question posed by this appeal is this: Is the two-year statute of limitations for personal injuries tolled in a malpractice case if the plaintiff is unaware of the negligent act which caused her injury and

through no fault of her own does not learn of it until more than two years after it occurred.

The question, which has not been passed upon heretofore by a court of review in this State, arises from these facts, admitted by the defendant's motion to strike the plaintiff's complaint: Rowena Mosby was operated on by agents of the defendant on March 25, 1956. A surgical needle used during the course of the operation was left in her body. On December 30, 1960, during an operation at another hospital, the needle was discovered in the area of her right knee. The needle had worked its way through her body and had caused serious and permanent injury.

The complaint filed on January 11, 1962, was in two counts. Count I charged that the defendant carelessly permitted the needle to be placed in her body, negligently permitted it to remain there and negligently failed to remove it at the conclusion of the operation. The plaintiff further alleged that she had no means of knowing about the needle and did not learn of it until the second operation was performed four years and nine months later. Count II repeated the allegations of Count I but added thereto the charge that the negligence had been fraudulently concealed.

The defendant moved to dismiss the complaint on the ground that it was barred by the statute of limitations. The motion was sustained as to the first count but denied as to the second. The court certified that there was no just reason for delaying an appeal. The plaintiff has appealed from the dismissal of Count I; the defendant has not cross-appealed from the order denying its motion to dismiss Count II.

The applicable statute is section 15, chapter 83, Ill Rev Stats, 1961: "Actions for damages for an injury to the person . . . shall be commenced within two years next after the cause of action accrued." The plaintiff contends that where an operation has taken

place and the incision is closed with a foreign object such as a needle, gauze or sponge left in a patient's body, the cause of action accrues upon discovery of the act of malpractice, or when, by the exercise of reasonable care, the patient could have learned of the negligent act. There are cases from other jurisdictions which support the plaintiff's contention. Spath v. Morrow, 174 Neb 38, 115 NW2d 581 (1962); Fernandi v. Strully, 35 NJ 434, 173 A2d 277 (1961); Ayers v. Morgan, 397 Pa 282, 154 A2d 788 (1959); Louisell and Williams, Trial of Medical Practice Cases, ch 13, pp 363–415 (1960). In some instances the hardship imposed by limitations statutes is alleviated by somewhat tenuous theories of tort law which extend the time of the wrongful act. One is that the tortious insertion of a foreign substance in the body of a patient creates a duty to remove the substance and that the duty continues until the wound is closed in a proper way and all the appliances used in the operation removed; another, and the more prevalent, is that the negligence of the operating physician continues as long as there is the relationship of physician and patient and that the statute does not begin to run until the post-operative treatment is terminated. Huysman v. Kirsch, 6 Cal2d 302, 57 P2d 908; Bowers v. Olch, 120 Cal App2d 108, 260 P2d 997; Thatcher v. DeTar, 351 Mo 603, 173 SW2d 760.

The greater weight of authority is that the statute of limitations commences when the negligent act takes place and that the statute is not tolled by the plaintiff's ignorance of his injury. The cases comprising both the majority and minority rules are collected in annotations in 74 ALR 1317, 144 ALR 209 and 80 ALR2d 368. If any trend is discernible it is in the direction of the minority rule. Even in the opinions of those courts which have more recently followed the majority rule, there is an occasional expression of regret. The harshness of the rule is recognized but the

statutes which compel the rule are followed, albeit reluctantly. Roybal v. White, 72 NM 285, 383 P2d 250 (1963); Tantish v. Szendey (Maine), 182 A2d 660 (1962); Summers v. Wallace Hospital (construing the Idaho statute), 276 F2d 831 (9th C) (1960).

In Illinois it has been held (in nonpersonal injury cases) that a plaintiff's ignorance of the cause of action does not delay the operation of the statute. In Lancaster v. Springer, 239 Ill 472, 88 NE 272, a suit to establish a trust and for an accounting, the court said: "The failure of the complainants to learn of the existence of their cause of action does not prevent the operation of the Statute of Limitations." Jackson v. Anderson, 355 Ill 550, 189 NE 924, was an action by stockholders to cancel an issue of corporate stock which had not been paid for. The stockholders alleged that they were unaware of the issuance of the stock by the officers of the corporation until after the statute of limitations had run. The court said that this did not prevent the running of the statute. In personal injury cases it has been held that the cause of action accrues and the statute of limitations starts to run when the act complained of took place. In LeRoy v. City of Springfield, 81 Ill 114 (1876), the court stated:

"Appellant asks, when shall it be said the cause of action arose, as, in many cases, the extent of the injury cannot be known for a long time?

"The principle, we understand, is, that the cause of action arises at the time the injury was done, and the statute begins to run from that day."

In Calumet Elec. St. R. Co. v. Mabie, 66 Ill App 235 (1896) the court said:

"In actions for injuries resulting from the negligence or unskillfulness of another, the statute attaches and begins to run from the time when the injury was first inflicted, and not from the

time when the full extent of the damages sustained has been ascertained."

The same rule was followed in Gangloff v. Apfelbach, 319 Ill App 596, 49 NE2d 795, a malpractice case. The plaintiff's fractured elbow was placed in a cast by the defendant physician. When the cast was removed the elbow could not be moved. The defendant operated upon the plaintiff in June 1936. Following this operation the plaintiff's fingers lost their power of movement. A second operation in 1936 brought no improvement. In January 1938 the defendant performed a third operation; it was also a failure. The defendant continued to treat the plaintiff until March 1940 with unsatisfactory results. In 1941 the plaintiff brought his suit against the defendant. The court had to decide if the statute of limitations began to run when the alleged act of negligence was committed in 1936 or from the time the physician ceased to treat the patient in 1940. The court held that despite the continuation of treatment after the first operation, the cause of action accrued and the statute of limitations commenced at the time of the first operation.

Although in the Gangloff case the plaintiff was aware of his injury immediately after the first operation, that case is persuasive here because the court reviewed the decisions of other jurisdictions bearing closely on the issue now before us and after having done so, followed the majority rule, which was the same then as it is today.

A statute of limitations is designed to prevent recovery on stale demands. It is a statute of repose which gives a defendant a reasonable opportunity to investigate a claim and to prepare his defense within a time when the facts are still accessible and witnesses are still available. Although such a statute serves a laudable purpose in preventing old and vexatious de-

340

mands, it also arrests meritorious claims. Such is the situation here.

The legislature has made certain exceptions to the operation of the statute. It has provided that the statute is tolled if the person entitled to bring the action is an infant, or is mentally ill or imprisoned on a criminal charge. It has provided that the statute is tolled if the person liable to an action departs from and resides out of the state, or fraudulently conceals the cause of action. Nowhere is there a provision to the effect that mere lack of knowledge on the part of the injured party operates to delay the commencement of the limitation period.

The legislature has enacted exceptions of this nature in cases of occupational diseases and radiological injury. The Workmen's Compensation Act provides that an application for compensation must be filed with the Industrial Commission one year after the date of an accident. However, for radiological injury the period of limitation is extended to 15 years after the last day an employee was employed in an environment of hazardous radiological activity. Also the Act provides that notice of an accident must be given to the employer not later than 45 days after the accident except for cases involving injuries incurred by exposure to radiological materials or equipment. In such cases notice can be given within 90 days after the date the employee *knows* or *suspects* that he has received an excessive dose of radiation. Ill Rev Stats 1963, c 48, § 138.6(c)(3).

Under the Workmen's Occupational Diseases Act an employee has until one year from the date of his *disablement* to file an application for compensation. Ill Rev Stats 1963, c 48, § 172.41(c). An occupational disease usually comes about, not from a single occurrence, but from long exposure to conditions which,

because of the particular nature of the occupation, gradually and perhaps imperceptibly cause an illness peculiar to the occupation. However, there is much in common between the lack of knowledge of the inception of an occupational disease, and the lack of knowledge that a foreign object has been left in a person's body. In both, the awareness of the disease or the awareness that an illness is induced by the presence of a foreign object comes long after the original cause of it occurred.

■ We must assume that the legislature acted deliberately in not extending the same relief to malpractice cases as it did to cases of radiological injury and occupational diseases. We cannot do what the legislature has failed to do and the order dismissing the plaintiff's complaint must be affirmed. We are not pleased with this result. The statute barred the plaintiff's claim before she knew she had been wronged. The defendant's admitted negligence was not ascertainable to her—she presumably was under anesthetic when it took place—and she certainly has not slept on her rights. It would be more equitable if the commencement of the limitation period were delayed until she discovered the reason for her illness, but the statute does not permit the construction necessary to obtain this equitable result. Relief must come from the legislature and not from the courts.

Judgment affirmed.

SULLIVAN, J., concurs.

SCHWARTZ, P. J., specially concurring.
I do not concur in the concluding portion of the opinion commencing with the sentence: "We are not pleased with this result." This in effect recommends that an amendment be made to the statute of limita-

tions which will provide relief for a plaintiff in a situation such as the one here involved. All aspects of the problem should be investigated ·by the legislature before that is done.