COMMUNITY BANK OF UTICA, Plaintiff-Appellee, *v.* CHARLES CALKINS, Defendant-Appellant.—(VIRGIL E. CRANE, Third-Party Defendant.)

Third District   No. 76-212

Opinion filed September 26, 1977.

Craig M. Armstrong and Robert L. Carter, both of Wolslegel & Armstrong, of Ottawa, for appellant.

Melvin H. Hoffman, of Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This action was instituted by the plaintiff, Community Bank of Utica, against the defendant, Charles Calkins, to recover $4,000 alleged due under a written guarantee agreement. After the jury returned a verdict in favor of plaintiff for the sum of $1,765.25, the circuit court of LaSalle County entered judgment on the verdict and defendant appealed.

In February of 1970 Virgil Crane executed and delivered to the plaintiff a note and security agreement in the sum of $7,653.60. The note was secured by a used White truck-tractor. A written guarantee was executed at approximately the same time by Howard Jackson, guaranteeing to the bank prompt payment on Crane's indebtedness to the bank, but only to the extent of $2,500.

In June of 1970 Crane executed a second note and security agreement in the amount of $3,259.06 for repair of the truck-tractor's engine. At the request of the plaintiff and to provide Crane with the necessary credit to obtain the loan for $3,259.06, defendant executed a written guarantee by which defendant guaranteed to the bank the prompt payment of Crane's indebtedness to the bank, but only to the extent of $4,000. The guarantee was executed on a standard form which by its printed terms provided for a continuing general guarantee limited only to $4,000.

Defendant, Crane, and John Goskusky, the officer of the bank involved with the transaction but who later left plaintiff's employment, all testified that the guarantee was limited to the amount needed to complete the repair of the truck-tractor's engine and was not to apply to future loans. In short, it seems the guarantee was intended by the parties to be restricted and not general. While plaintiff objected to introduction of evidence contradicting the express terms of the written agreement, the court allowed the testimony as relevant to defendant's allegations of fraud. No contention is made on appeal by either party as to the correctness of this ruling.

Defendant, Crane, and Goskusky were all present during the conversations in which Crane and the parties discussed the transaction. The defendant testified Goskusky told him that any proceeds collected by the bank, whether from payment by the debtor or from the sale of the collateral, would be used first to reduce defendant's guarantee obligation. Crane testified that any payments made subsequent to the repair of the engine would reduce the amount Calkins owed on the guarantee.

Goskusky testified he told defendant that anything in excess of regularly scheduled payments would be used to reduce defendant's guarantee. Neither Goskusky nor Crane had any recollection that defendant was to receive any priority in the application of the proceeds from the sale of the truck.

After being unable to make payments, Crane voluntarily turned the truck-tractor over to the bank at its request. The bank received a cash bid of $5,000 for the truck, which was rejected by Goskusky as being unreasonable. By refinancing the truck, the bank was able to obtain a purchase price of $6,500 at a private sale. Efforts were made to contact local truckers who might be interested in purchasing the truck-tractor and some form of advertising was done. No attempt was made to offer the truck for sale through either of two local truck dealers in the area.

The general manager and president of Ottawa White Sales was qualified by the defendant as an expert and estimated the value of the truck to be approximately $10,000 to $11,000 immediately after his firm had rebuilt the truck's engine. His opinion was based in part on a book which advises dealers on the value of trucks of a given vintage. He believed that even after several thousand miles were put on the truck with its new rebuilt engine, it would still be worth approximately the same amount. While the witness stated he probably could guarantee a price of $10,000 for the truck if sold through his firm, he also stated that this figure would depend on the availability of buyers and that it could take months to sell the truck.

Correspondence sent by Goskusky to the defendant after the sale of the truck indicated that Goskusky believed the defendant was responsible upon his guarantee for only $1,890.25. This figure was arrived at by reducing Crane's total indebtedness ($10,593.76) by the proceeds of the sale ($6,500) less the proper expenses of sale ($296.49), further reduced by the guarantee of Howard Jackson ($2,500). Evidence was also introduced of a payment of $125 to Crane's account by someone unknown. The amount of the jury's verdict is exactly $125 less than $1,890.25.

Throughout the trial, plaintiff contended that defendant was responsible for the full amount of the guarantee. However, on appeal, plaintiff concedes that the parties intended a restricted guarantee limited to the actual cost of repairing the truck ($3,259). Plaintiff also concedes that in spite of the language in the agreement to the contrary, the guarantee was not intended to apply to future loans. However, he correctly points out that no future loans were made. Though not conceding that defendant's guarantee was subordinate to Jackson's guarantee, plaintiff has not taken a cross-appeal and requests this court to affirm the judgment as entered. While not denying that he signed the

guarantee or that he intended to guarantee a loan by the bank to Crane, defendant asks this court to reverse the circuit court's judgment. We decline to do so.

Before embarking further, we would like to state that no issue is raised on appeal concerning the parol evidence rule and we express no opinion as to its applicability.

Defendant first contends the evidence shows the guarantee was intended to be restricted and not general. Plaintiff has conceded this point on appeal and we will not consider the matter further.

The next argument advanced is that the guarantee was procured by fraud and therefore voidable. Specifically, defendant contends he relied upon false misrepresentations which were made to him by the plaintiff for the purpose of inducing him to execute the written guarantee. Defendant claims he signed the agreement in blank and that the blanks were later filled in not in accord with their agreement.

■■ The elements which a party must prove to establish fraud are adequately set forth in *Broberg v. Mann*, 66 Ill. App. 2d 134, 213 N.E.2d 89, and need not be reiterated here. As to the defendant's claim that the guarantee he signed did not contain a $4,000 limitation, conflicting evidence was presented and the jury was free to disregard the defendant's version of the facts. As to the fact that the guarantee was to be limited to the cost of repairs, $3,259, and the $4,000 was in excess of that cost, at the time the agreement was signed no one knew the precise amount of the yet to be completed repairs and the $4,000 figure was based on the upper limit of the estimated cost of repairs. We fail to comprehend how this amounts to an untrue statement which is necessary to support a claim of fraud.

As the the failure of the written provisions of the agreement to reflect the restricted character of the guarantee, the defendant was a business man who should have been capable of reading and understanding the printed provisions such as those contained in the form guarantee. No representations were made by plaintiff that the contract defendant signed was not in accord with their oral agreement. Under the circumstances, defendant had no right to rely upon the fact that the written guarantee agreement was different from the parties oral agreement. The jury heard all the evidence which defendant claims supports his allegation of fraud, but in a special interrogatory submitted by the defendant, the jury found that the guarantee agreement of Charles Calkins was not induced by fraud. The finding of the jury in the special interrogatory accords well with both the law and the evidence.

■■ From the testimony at trial and plaintiff's concessions on appeal, we believe that the failure of the agreement to accurately reflect both parties intent is more nearly akin to mutual mistake than to fraud. Defendant has argued that mutual mistake exists and we should therefore

reverse the judgment. We do not agree that he is entitled to such relief. It is clear from the testimony at trial that both parties had reached an agreement by which the bank would extend credit to Crane on the basis of defendant's guarantee. Defendant testified he intended a guarantee. The bank has fully performed its obligations of extending credit to Crane. Once one party has fully performed, unless the other party tenders return of the consideration, the nonperforming party is not entitled to rescind a contract on the grounds of mistake. (See *Jackson v. Anderson,* 355 Ill. 550, 189 N.E. 924.) In light of the defendant's inability to return the consideration given by the bank, he cannot avoid the contract in its entirety.

However, defendant would be entitled to have the contract reformed or modified to reflect the agreement of the parties. From the evidence at trial and the amount of the verdict, it is evident that the jury awarded damages based on the uncontroverted understanding between the parties. It appears the jury found the following: that the agreement was restricted to the cost of repairs, and the plaintiff has so conceded on appeal, that the parties agree that the defendant's guarantee was only for whatever debt would exist in excess of Jackson's general guarantee, and that defendant was entitled to a credit for the mysterious $125 payment to Crane's account. We believe that on this issue, the defendant has already been given all the relief that equity and good conscience demands.

Defendant also contends that the trial court erred in refusing to allow testimony of a conversation between Goskusky and Ottawa White Garage regarding the value of the truck. During the trial, defendant offered to prove that Crane had overheard a telephone conversation between Ottawa White Garage and Goskusky in which Ottawa White told Goskusky that the truck-tractor was worth $10,500 on their lot. Defendant argues this testimony was admissible to show that the bank had knowledge that the truck was worth more than the price finally accepted in a private sale. It follows, according to defendant, that by proceeding to sell the truck for less than $10,500 while knowing it was worth $10,500, the bank conducted the private sale in a commercially unreasonable manner.

■■ We agree with the defendant that this testimony should have been admitted to show that the bank had knowledge of the approximate value of the truck prior to sale. However, we do not believe the error significant enough to merit reversal. While it is relevant to an inquiry of commercial reasonableness that a secured party has knowledge that an article has a certain value as indicated from one source, and then proceeds to sell it for less, this in and of itself does not establish commercial unreasonableness. There are many other factors which bear upon this issue.

Ottawa White did testify that the value of the truck was $10,000 or

$11,000. Goskusky testified that he telephoned White Garage and asked about the value of the truck, implying that he was aware that White estimated the truck to be worth $10,000 or $11,000. There is testimony in the record that some advertising was done. There was also testimony that the truck without the motor rebuilt was worth $5,000 and the actual cost of rebuilding the motor was $3,259, from which the jury could reasonably infer that White's estimate of $10,000 or $11,000 was too high. The jury was read the following instruction which is based upon section 9—507 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—507) and which accurately reflects the law.

> "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefore, or if he sells at the price current in such market at the time of the sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

After being so instructed, the jury found in a special interrogatory submitted by defendant that the sale was conducted in a commercially reasonable manner. We believe, on balance, that while error was committed, it did not contribute to an erroneous verdict.

Defendant's remaining contention may be summarily treated. He alleges that the jury's verdict should be reduced by $500 as the result of a stipulation of record regarding $500 which was paid under the Jackson guarantee during the course of this litigation. We have examined the record and find that the plaintiff's attorney did not stipulate to reduce any judgment by $500. Rather, he stipulated that the total indebtedness was reduced to $3,790.25 by the $500 payment and plaintiff's recovery was limited to this amount. Hence, based upon the stipulation, the court would reduce any higher jury verdict to this figure.

For the foregoing reasons the judgment of the circuit court of LaSalle County is affirmed.

Judgment affirmed.

STENGEL, P. J., and SCOTT, J., concur.