Beatrice FLEMING, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE AMF O'HARE and Marvin Runyon, Postmaster General, United States Postal Service, Defendants–Appellees.

No. 92–2735.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1994.

Decided June 16, 1994.

Andrey Filipowicz (argued), Chicago, IL, for plaintiff-appellant.

Madeleine S. Murphy, Asst. State's Atty., Office of the U.S. Atty., Criminal Div., Michele M. Fox, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Civil Div., Appellate Section, Chicago, IL, Joan C. Goodrich, U.S. Postal Service, Office of Labor Law, Washington, DC, for defendants-appellees.

Before POSNER, Chief Judge, and ESCHBACH and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, a black woman who suffers from schizophrenia and a hearing impairment, was fired by the Postal Service in 1986. She filed a charge with the EEOC alleging breach of contract, retaliatory discharge, and discrimination on grounds of race, sex, and handicap, and later this suit repeating these charges. The Postal Service offered to settle the suit for $50,000 plus attorney's fees of $25,000. At a hearing before the district judge Fleming said that the offer was "really not sitting in complete agreement with" her because she had lost more than $200,000 in wages and wanted her job back. The judge urged her to accept the offer, calling it "eminently reasonable," but said the decision was hers to make and that she should confer with her lawyer about it. The judge then turned to the other cases on his call. Later in the morning he called Fleming's case again. Her lawyer told the judge that they had conferred and that she had agreed to accept the settlement offer. Although present, she said nothing. The judge said that there was now a binding oral agreement to settle the case, which he dismissed with leave to reinstate within 30 days if the agreement was not reduced to writing. More than 30 days later Fleming asked that the case be reinstated because she did not "comprehend the significance of the written agreement." Her lawyer explained that Fleming thought she ought to be reinstated in her job as part of the settlement but realized she had entered into a binding oral agreement to settle the case without reinstatement.

The district judge denied the motion and Fleming received and cashed a check for $50,000; her lawyer (to whom presumably she had assigned her statutory entitlement to attorney's fees, as is common) received a check for $25,000. A couple of weeks after her check had been mailed to her and presumably after it had been cashed, although that date is not in the record, Fleming, no longer represented by counsel, filed a handwritten Rule 60(b) motion with the district judge. In it she claimed that she had been "confused, disoriented, and under a lot of pressure" at the settlement hearing and did not remember having instructed her lawyer

to accept the Postal Service's offer. The judge denied the motion without a statement of reasons and Fleming then retained new counsel to prosecute this appeal.

■■■ The briefs have treated us to an elaborate tour of the principles that govern Rule 60(b), and when settlements or releases may be set aside, and what authority lawyers have to make settlements on behalf of their clients, and how insanity affects all this and what law governs these issues. We can cut through all this doctrinal thrust and parry by reminding the parties of one of the most elementary principles of contract law, strangely lost to sight in the jungle of doctrinal intricacies: that a party may not rescind a contract without returning to the other party any consideration received under it. *Jackson v. Anderson,* 355 Ill. 550, 189 N.E. 924, 926 (1934); *Community Bank v. Calkins,* 52 Ill.App.3d 759, 10 Ill.Dec. 444, 447, 367 N.E.2d 1053, 1056 (1977); *Smith v. First National Bank,* 254 Ill.App.3d 251, 191 Ill. Dec. 711, 722, 624 N.E.2d 899, 910 (1993). These are Illinois cases, and, as we noted in *Fortino v. Quasar Co.,* 950 F.2d 389, 394–95 (7th Cir.1991), it remains unsettled in this circuit whether a dispute over the settlement of a federal case arises under state law—on the theory, for which the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), provides support, that it is merely a contract dispute with a remote federal origin, *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 475 (7th Cir.1986); *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185–86 (7th Cir.1985)—or under federal law, *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 458 (7th Cir.1991); and whether, if the latter, state law should be adopted as the federal rule of decision anyway, unless to do so would disserve federal interests. *Id.* at 457–58; *Riley v. American Family Mutual Ins. Co.,* 881 F.2d 368, 373–74 (7th Cir.1989). There is no practical difference in this case. The principle that a release can be rescinded only upon a tender of any consideration received is not a peculiarity of Illinois law; it is a general principle of contract law, Samuel Williston, 12 *Williston on Contracts* § 1460 (Walter H.E. Jaeger ed., 3d ed. 1970); *In re Peoples Market-*

*ing Corp.*, 347 F.2d 398, 400 (7th Cir.1965); *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1455 n. 4 (9th Cir.1988); *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220–21 (5th Cir.1991); *Wamsley v. Champlin Refining & Chemicals, Inc.*, 11 F.3d 534 (5th Cir.1993); *Prudential Ins. Co. v. Smith*, 231 Ind. 403, 108 N.E.2d 61, 64 (1952), and would surely be a component of any federal common law of releases. Not even plaintiffs are helped in the long run by a rule allowing them to have their cake and eat it, for a defendant will not pay as much for a release that the plaintiff can challenge without having to repay the money as the price of maintaining the challenge. Whether the tender must always precede the institution of the suit, or whether, as courts now hold in equity cases (which this case is in part, as the plaintiff seeks reinstatement as well as damages), it is enough that the complaint contains an offer to restore the consideration, an offer that the court could enforce by a conditional judgment, 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.15, pp. 429–30 (1990), is a detail of no importance in this case. Neither tender nor offer was made.

When federal law limits a class of releases, as in cases under the Federal Employers' Liability Act, or the closely parallel Jones Act, or the Age Discrimination in Employment Act, each of which regulates releases, see 45 U.S.C. § 55, 46 U.S.C. § 688(a), 29 U.S.C. § 626(f)(1), the common law rule requiring tender as a prerequisite to rescission may have to give way. *Hogue v. Southern R. Co.*, 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968) (per curiam); *Oberg v. Allied Van Lines, Inc.*, 11 F.3d 679 (7th Cir.1993); *Forbus v. Sears Roebuck & Co.*, 958 F.2d 1036, 1040–41 (11th Cir.1992); *Smith v. Pinell*, 597 F.2d 994 (5th Cir.1979) (per curiam). (But with respect to the age discrimination law, *Wamsley v. Champlin Refining & Chemicals Co., supra*, 11 F.3d at 541 n. 13, strongly criticized our decision in *Oberg* and reached the opposite result.) The idea behind these cases (and their common law counterpart, cases in which the release was fraudulently executed and therefore void, *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 552 N.E.2d 207, 210–11 (1990); *Nelson v. Browning*, 391 S.W.2d 873, 877 (Mo.1965)) is a little obscure to us. Of course a worker who has executed a void release should not be barred from challenging it by his inability to tender back the consideration received, as the effect would be to make the release enforceable as a practical matter. But not all the cases excusing tender are ones where the plaintiff does not have and cannot borrow the money for it. Unproblematic for excusing tender, however, is the case in which all the plaintiff obtained in exchange for the release was something to which he was already entitled, as distinct from obtaining payment of a disputed or disputable claim. For in the former case the release would fail for want of consideration, *Berning v. A.G. Edwards & Sons, Inc.*, 990 F.2d 272, 275–76 (7th Cir.1993); *General Intermodal Logistics Corp. v. Mainstream Shipyards & Supply, Inc.*, 748 F.2d 1071, 1074–77 (5th Cir.1984) (per curiam), and the amount that the plaintiff had received in exchange for the release would simply be set off against any recovery that he might obtain in the suit.

The Ninth Circuit, in *Botefur v. City of Eagle Point*, 7 F.3d 152, 155–56 (9th Cir. 1993), added to the list of exceptions to the tender requirement by holding the requirement inapplicable to suits under 42 U.S.C. § 1983, even though that statute does not limit releases. The court cited 42 U.S.C. § 1988(a), which provides that when the remedies provided by federal law for violations of section 1983 and other Reconstruction Era civil rights statutes are inadequate the court may borrow state remedies; and it held that the absence of a tender requirement in section 1983 did not render the federal statutory remedies deficient. We do not find the analysis persuasive. The tender requirement is not a remedy. It is a protection for defendants, although it may as we have noted benefit plaintiffs in the long run too; a premise of a free-market system is that both sides of the market, buyers as well as sellers, tend to gain from freedom of contract. Section 1988(a) does not bear on the question whether to extend such a protection to defendants, which is a question of common law. Unlike our colleagues in the Ninth Circuit we do not think the Supreme Court's decision in *Hogue* can be detached from its context, that of a

federal statute that regulates releases, displacing common law rules. At all events, the present case was not brought under 42 U.S.C. § 1983 (and could not have been, because the defendants were not acting under color of state law), but under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.* These statutes are not affected by 42 U.S.C. § 1988(a), and therefore the ground for *Botefur*, whether right or as we think wrong, is inapplicable.

As a matter of fact none of the exceptions to the tender requirement that we have discussed (or other exceptions, discussed in 12 Williston, *supra*, §§ 1460, 1460A) is applicable to this case. The Postal Service is not accused of fraud, the plaintiff's entitlement to the $75,000 that she received in exchange for the release is not her indisputable right, and no statute regulates these releases. This is a garden-variety rescission case requiring tender back of consideration received. If A sells a car to B for $5,000 and then sues to rescind the sale and recover the car on the ground that B induced the sale at that price by some fraud, A must tender the $5,000 to B (or deposit it in court, to B's account). He may not keep it. The idea of rescission is to put the parties back where they were before the contract; to undo the contract. *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir.1985); *Dahl v. United States*, 695 F.2d 1373, 1382 (Fed.Cir.1982); *Puskar v. Hughes*, 179 Ill. App.3d 522, 127 Ill.Dec. 880, 883, 533 N.E.2d 962, 965 (1989). It is the same with a release, which after all is just another contract. *Farm Credit Bank v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991); *Havoco of America, Ltd. v. Sumitomo Corp.*, 971 F.2d 1332, 1341 (7th Cir. 1992); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1543 (10th Cir.1993). Having received $75,000 in exchange for relinquishing her legal claims, Fleming if she wanted to reassert those claims had to return the full $75,000 that she and her lawyer had received. She could not take the position that she was happy to have the money but would like reinstatement too, for the surrender of her claim to reinstatement was part of the consideration for the Postal Service's offer of $75,000. To rescind a settlement, the relief sought by her Rule 60(b) motion, is to go back to where the parties would have been had there never been a settlement. They would have been in the situation in which she had legal claims but no money and the Postal Service had its money but no release.

Fleming cannot be taxed with having failed to realize this when she filed her Rule 60(b) motion without the assistance of counsel. But she has counsel in this court, who should either have asked us to remand the case to the district court to enable him to file a proper Rule 60(b) motion containing the required tender or represented to us that his client was willing and able to tender the $75,000 in exchange for a rescission of the settlement agreement. He followed neither course, and although the matter was explored at length in the oral argument he did not submit a tender afterward. If we had reason to suppose that Fleming has or can raise that amount of money—or would want to, if she knew that this was the condition of her being able to reinstate her lawsuit—we might move on to the other issues, confident that the omission of the tender could be rectified. We have no basis for any such confidence. If all Fleming wants is the equitable remedy of reinstatement, then, as we suggested earlier, a court could condition any judgment ordering the Postal Service to reinstate her on her returning the $75,000. But unless there is a reasonable basis for confidence that she could or would fulfill such a condition—and there is not, for she has made no offer to return the money, let alone an offer supported by sufficient assurances to be credible—the Postal Service should not be put to the expense of defense. It was in part to be spared such expense that the Postal Service settled with her for $75,000.

The absence of the tender made the action of the district judge in turning down the Rule 60(b) motion unimpeachable, and we therefore affirm.