Catherine **WAGNER**, et al., Plaintiffs,

v.

The **NUTRASWEET COMPANY,** Defendant.

No. 92 C 2418.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 17, 1994.

Opinion Denying Clarification or Reconsideration Dec. 5, 1994.

Thomas R. Meites, Joan Harlow Burger, Paul William Mollica, Meites, Frackman, Mulder & Burger, Chicago, IL, Laurie Arden Wardell, Futterman & Howard, Chtd., Chicago, IL, for plaintiff.

Thomas G. Abram, Richard C. Robin, Edward C. Jepson, Jr., Carlys Elizabeth Belmont, Karen L. Taylor, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Before the Court is a Motion for Summary Judgment, filed by Defendant, Nutrasweet Company ("Nutrasweet" or "company"), and a Motion for Class Certification, filed by Plaintiff, Catherine Wagner ("Wagner"), on behalf of the potential class: Anne Marie Sorcenelli ("Sorcenelli"); Sarah Baldwin Weissman ("Weissman"); and Jenny Bridges Cox Harrison ("Harrison"). After careful review, the court finds that Nutrasweet's Motion for Summary Judgment must be granted in part and denied in part (# 70–1).[1] Further, the court's disposition of Nutrasweet's Motion mandates that Wagner's pending Motion for Class Certification be denied.

## PROCEDURAL HISTORY

On April 8, 1992, Wagner, individually and on behalf of a class of female plaintiffs similarly situated, filed a three count Amended Complaint ("Complaint") against Nutrasweet. In her Complaint, Wagner alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d) (1982), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq. (1982),[2] as amended by the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071–1099.[3]

As pled, the Complaint satisfies all jurisdictional prerequisites required by Title VII and the Equal Pay Act ("EPA"). First, Nutrasweet is an "employer," and Wagner and the other members of her class are former "employees" of the company for purposes of

---

1. Nutrasweet's Motion for Summary Judgment is granted as to Sorcenelli, Weissman and Harrison on all claims. The Motion is also granted in favor of Nutrasweet and against Wagner on all claims arising before March 25, 1991. 12(m) ¶¶ 28, 29; 12(n) ¶ 10. Nutrasweet's Motion is denied, however, as to Wagner's claim that Nutrasweet: (1) hired Mike Vinitsky in April 1991 (but refused to consider Wagner) for a Director, Human Resources position in another business group, 12(n) ¶ 11; and (2) named Wayne Tompkins in July/August 1991, as Wagner's successor to the Director, Human Resources position in R & D. 12(n) ¶ 12.

2. In Count I, Wagner alleges discriminatory compensation in violation of Title VII, § 2000e–2(a)(1) and (2). In Count II, she alleges unequal compensation in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), § 216(b) and § 260. In Count III, Wagner alleges termination because of sex in violation of Title VII, § 2000e–2(a)(1) and (2), under theories of disparate treatment and disparate impact.

3. In Landgraf v. USI Film Products, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court ruled that § 102 of the Civil Rights Act of 1991 (CRA '91), which includes provisions that create a right to recover compensatory and punitive damages and to demand a jury trial for intentional discrimination in violation of Title VII, does not apply retroactively to Title VII actions which arose before the enactment of CRA '91. See also Rivers v. Roadway Express, Inc., —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (holding that § 101 of CRA '91, defining § 1981's "make and enforce contracts" phrase also does not apply retroactively to actions which arose before enactment); Mojica v. Gannett, 7 F.3d 552 (7th Cir.1993) (same). Congress enacted CRA '91 on November 21, 1991. All claims raised by Wagner (whether barred or not) arose before this date. Therefore, the 1991 amendments to Title VII cannot be applied retroactively to Wagner's Complaint.

both statutes. 42 U.S.C. § 2000e (Title VII); 29 U.S.C. § 262(b) and (c). Second, the court has federal question jurisdiction over Wagner's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3); venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 42 U.S.C. § 2000e–5(f)(3), as alleged in Wagner's Complaint. Third, Wagner filed a claim with the EEOC within 180 days from the date her cause of action arose.[4] 42 U.S.C. § 2000e–5(e). Fourth, Wagner filed suit in district court on April 8, 1992, the same day she received a right to sue letter from the EEOC, thus satisfying Title VII's ninety (90) day requirement. 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28 (1991). Fifth, Wagner filed suit on April 8, 1992, satisfying the EPA's two year statute of limitations for any claims arising after March 25, 1991. 29 U.S.C. § 225(a).[5]

## LEGAL STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510.

"The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are irrelevant or unnecessary are not material. *Id.*

"Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As stated in *Anderson*, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249, 106 S.Ct. at 2511. "When a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. at 2511. "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2510–11.

## FACTS

The following facts are material and undisputed. The Nutrasweet Company manufac-

---

**4.** Wagner filed a claim with the EEOC on November 29, 1991, charging Nutrasweet with discriminatory termination on October 4, 1991, and discriminatory compensation "during her tenure," March 1, 1984, through October 4, 1991. Only compensation claims arising after March 25, 1991, survive summary judgment. Further, Nutrasweet's argument that plaintiffs Harrison and Sorcenelli did not file timely EEOC charges fails, since Wagner's individual claims survive summary judgment. *See Banas v. American Airlines*, 969 F.2d 477, 482–83 (7th Cir.1992) (timely filing by class representative satisfies requirement for entire class unless representative's individual claims are subsequently dismissed).

**5.** The Equal Pay Act, 29 U.S.C. § 251 *et seq.*, provides in relevant part:

> **§ 255. Statute of Limitations**
> Any action commenced ...
> (a) if the cause of action accrues on or after May 14, 1947, may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

tures and distributes an artificial sweetener and a fat substitute. 12(m) ¶ 1. Nutrasweet originally was a division of G.D. Searle Company, but became a separate corporate entity in January 1986, and is a subsidiary of Monsanto Company today. In late December 1990, Nutrasweet determined that a significant "reconfiguration" (or elimination of jobs) was warranted due to the anticipated expiration of certain patents in December 1992. 12(m) ¶ 2.

## I. THE 1991 RECONFIGURATION

In March 1991, Nutrasweet began to implement the reconfiguration and the resulting terminations. 12(m) ¶ 3. Each terminated employee received a letter stating that he or she had been terminated ("separation letter") and setting forth the severance benefits which Nutrasweet planned to provide under its March 1, 1991, Separation Guidelines ("Guidelines"). According to the Guidelines, an employee terminated due to conditions beyond the employee's control such as job elimination or change in job content, would receive severance pay and continued participation in health and benefit programs. According to the Guidelines, Nutrasweet intended to calculate the duration of these benefits on an individual basis depending upon the employee's status and seniority with the company. The Guidelines also referred to the possibility that an employee might be placed on "redeployment" prior to termination of employment. Exhibit H, Wagner's Mem. In Opp. at 2.

In addition to setting out the severance benefits being offered to the employee, the separation letters also contained a general release, which stated:

> In consideration of the payments set out in this letter, you for yourself, your executors, personal representatives, successors and assigns hereby release and absolve the officers, directors, successors and assigns from any and all claims, charges, demands, or causes of action, known or unknown, asserted or unasserted, in any way arising from your employment, separation of employment or failure to be recalled or rehired by the company, including but not limited to, all claims which would have

been raised pursuant to any common law cause of action or pursuant to any federal, state or local statute, order, law or regulation. In making this Agreement, you and the Company agree that you were an "employee-at-will" of the Company and not employed pursuant to either a written or oral employment contract.

Directly below the release language, was a line for the employee's signature. Catherine Wagner and the other plaintiffs signed this release. Although the language of the release was identical for each plaintiff, the consideration offered in exchange was not. Some background discussion regarding each plaintiff's separation agreement is therefore necessary to the resolution of this Motion.

### A. Catherine Wagner

Catherine Wagner was hired by Nutrasweet on March 1, 1984, as a personnel manager. 12(m) ¶ 8. In late 1985, Wagner moved to Nutrasweet's Research & Development ("R & D") Group. 12(m) ¶ 10. In her positions first as Manager of Personnel and then as Director of Human Resources, Wagner was the top human resources executive for R & D. 12(m) ¶¶ 12–14. As Director, Wagner was responsible for providing employee relations services for the R & D Group, including management of salary, bonuses, hiring, promotion, termination and the administrative functions which accompanied those tasks. 12(m) ¶ 16.

In 1991, Wagner was responsible for implementing various components of the reconfiguration as they related to the termination of R & D employees. Wagner's tasks included the review of termination decisions in R & D with Mike Losee, Vice President of R & D, and each of the R & D managers in order to ensure equal employment compliance. 12(m) ¶ 18. Wagner also reviewed and prepared documents recommending termination decisions within R & D to Nutrasweet's "Separation Process Review Committee." 12(m) ¶¶ 19 and 21.

After the significant reduction of R & D, Wagner determined that Nutrasweet no longer needed a director responsible for R & D's human resources functions. 12(m) ¶ 26. As a result, Wagner recommended that her

position should be eliminated and a Manager, Human Resources position be created in its stead. 12(m) ¶ 26. Mike Losee agreed to the change and offered Wagner the position. 12(m) ¶ 27; 12(n) ¶¶ 9–10. Wagner refused, expressing her intention to leave the company instead. 12(m) ¶ 27; 12(n) ¶ 10.

Nutrasweet offered Wagner a "separation package" on March 25, 1991, which included a general release. 12(m) ¶ 28–29; 12(n) ¶ 10. Wagner, aware that the release was intended to prevent her from suing the company for any claims, known or unknown, which arose during her tenure, signed the agreement. 12(m) ¶¶ 28, 30; 12(n) ¶ 28, 30. In exchange for this agreement, Nutrasweet offered Wagner two months' redeployment pay beginning August 5, 1991, outplacement services,[6] and severance benefits worth $46,307.69. Nutrasweet also offered Wagner a "Retention Period" to complete various projects with retention pay "equal to one half of the amount of [Wagner's] separation pay," or $23,153.00.

According to the terms of her Retention Agreement with Nutrasweet, Wagner's Retention Period was designed to last no longer than October 1, 1991, with the possibility of a shorter period should the projects be completed ahead of schedule. Exhibit J, Nutrasweet's CMSJ. On August 1, 1991, Nutrasweet presented Wagner with a second separation letter requesting her to release the company from liability for claims arising from March 30, 1991, through August 5, 1991.[7] Exhibit I, Nutrasweet's CMSJ. Wagner refused to sign this agreement because she believed that Nutrasweet had discriminated against her during the retention period. 12(m) ¶ 38; Pl.'s Uncontested Facts ¶ 11.

In April 1991, Wagner learned that a Director, Human Resources position was open in another department. 12(n) ¶ 11; Nutrasweet Response to 12(n) ¶ 11. Although she applied for this position and was qualified, Nutrasweet did not select her, but hired Mike Vinitsky, another Nutrasweet employee

instead. 12(n) ¶ 11; Nutrasweet's 12(n) Response ¶ 11. In late July 1991, as Wagner's retention period neared its end, Nutrasweet named Wayne Tompkins as Director, Human Resources for R & D. 12(n) ¶ 12; Nutrasweet Response to 12(n) ¶ 12. At the time Tompkins was named as Director, he held the position of Manager in R & D and had been retained to pick up the responsibilities left after elimination of Wagner's Directorship. Nutrasweet Memo. In Support CMSJ at 8. While acting Director, Wagner knew that the Manager position, and thus Tompkins, was paid at a lower rate than the Director position she held. 12(m) ¶ 16. Further, Tompkins, even after being named to the Director position, earned less money than Wagner earned when she held the position. Nutrasweet Response to 12(n) at 6–7.

### B. Anne Marie Sorcenelli

Anne Marie Sorcenelli ("Sorcenelli") was employed by Nutrasweet as the Director, Human Resources for The Nutrasweet Business Group ("TNBG") from April 1990 until April 5, 1991. 12(m) ¶ 45. Her responsibilities included compensation, recruitment, termination, redeployment, management review, management succession, management training, equal employment opportunity compliance and all other employee relations issues for her business group. 12(m) ¶¶ 49, 50. Sorcenelli also participated in the corporate HR meetings which led to the preparation of the separation letter and release, trained managers in the distribution of the letters to affected employees, and conducted separation meetings. 12(m) ¶ 60.

Sorcenelli claims she knew she had been discriminated against prior to leaving the company because she did not receive the same compensation as other employees at her level in her group. On more than one occasion, she complained to her supervisor, Nick Rosa, the Vice President of Human Resources, Joe Clark, and others about the

---

**6.** The parties agree that Wagner understood outplacement services to be an additional benefit to which she was not entitled without execution of the release. 12(m) ¶ 24.

**7.** The August 1st separation letter indicates that although Wagner's job responsibilities in R & D ceased on August 5, 1991, Nutrasweet considered Wagner an employee through October 5, 1991, with severance benefits beginning October 6, 1991.

amount of her 1991 MIP Award in relation to other employees in her department. 12(m) ¶¶ 66, 67. Sorcenelli also knew that her comparative and alleged successor, Mike Vinitsky, was paid approximately $20,000 more than she was and she believed that he and another male employee, John Russett, were overpaid. 12(m) ¶ 68. She did not learn until after she left Nutrasweet that Vinitsky received a significantly higher MIP Award than she had for 1990. Pl.'s Uncontested Facts ¶ 16.

The 1991 reconfiguration resulted in a substantial downsizing of NSBG and a corresponding diminution in the scope and content of Sorcenelli's job. 12(m) ¶ 54. As a consequence, Sorcenelli felt that staying with Nutrasweet would be a "step down," so she notified Nutrasweet of her intent to resign and asked for and was given a separation package. 12(m) ¶ 54. At the time she signed the release on April 30, 1991, she believed she understood its terms, including the fact that she was giving up her right to sue the company in return for her separation and redeployment benefits. 12(m) ¶¶ 61, 62. According to Nutrasweet, Sorcenelli's separation package provided her the opportunity to receive redeployment pay and outplacement services if she executed the release. 12(m) ¶ 56. It is undisputed that Sorcenelli received redeployment pay for the period April 30, 1991 through July 1, 1991, a 40–week severance package and a $10,000 relocation payment. 12(m) ¶¶ 57, 58. Sorcenelli filed her charge of discrimination on September 20, 1992.

### C. Sarah Baldwin Weissman

Weissman began working for Nutrasweet in October 1983 as a promotions coordinator. 12(m) ¶ 75. In 1987, Weissman was promoted to the position of Manager of Special Events and Promotions. 12(m) ¶ 75. Her responsibilities included managing special promotional events, retaining and supervising outside agencies, negotiating and reviewing contracts, and managing the department's budget. 12(m) ¶¶ 79–82.

In March 1991, Weissman received a separation letter informing her that effective January 1, 1992, her position had been eliminated as part of the reconfiguration and outlining the terms of her separation from Nutrasweet. 12(m) ¶¶ 86, 87. According to the letter, Weissman would have a redeployment period from January 1, 1992, until March 1, 1992, and then receive separation benefits, including 16 weeks of salary plus outplacement. 12(m) ¶ 88. According to Nutrasweet, in addition to the benefits provided under its severance policy, Weissman's separation package provided Weissman the opportunity to receive two months' redeployment pay and certain outplacement services if she executed the release. 12(m) ¶ 89. Weissman took the March 26, 1991, separation agreement home, read it and understood its terms. 12(m) ¶ 91. However, she did not sign it at that time because she believed she would find another position at Nutrasweet. 12(m) ¶ 92.

Weissman continued to work for Nutrasweet under a consulting arrangement during her deployment period. 12(m) ¶¶ 93, 94. As a result of this arrangement, Weissman's redeployment period was extended through March 15, 1992. 12(m) ¶ 97. Nutrasweet paid her $24,000 for her services during this period in addition to her redeployment salary. 12(m) ¶ 94.

Weissman received a second separation letter dated March 11, 1992, reviewed it and signed it two days later. 12(m) ¶¶ 97, 98, 100; Pl.'s Uncontested Facts ¶ 7. She did not negotiate the terms of the letter nor was she encouraged to consult with an attorney. Pl.'s Uncontested Facts ¶ 7. Weissman understood that by signing the letter she was agreeing to the terms contained in its and also to the terms contained in the March 26, 1991 letter. 12(m) ¶ 99. Her last day of employment at Nutrasweet was March 15, 1992. 12(m) ¶ 101. She received redeployment pay and separation pay as provided in the March 26, 1991 letter, but decided not to make use of the outplacement services offered by Nutrasweet because she did not believe she needed them. 12(m) ¶ 102; Pl.'s Uncontested Facts ¶ 18.

Weissman filed her charge of discrimination on or about September 18, 1992, alleging discrimination in her compensation, her alleged failure to be promoted and her termi-

nation. 12(m) ¶ 103. Weissman does not deny that she knew. all the facts and reasons upon which she bases her sex discrimination claims against the company prior to her last day of employment at Nutrasweet and prior to her signing the release contained in the separation letter. 12(m) ¶ 104.

### D. Jenny Bridges Cox Harrison

Harrison was hired by Nutrasweet in October 1985. 12(m) ¶ 109. She began working in the R & D group in January 1986, managing projects and supervising other employees. 12(m) ¶¶ 110, 111. In 1988, Harrison moved to the Business Ventures group where she was involved in the negotiation and interpretation of agreements Nutrasweet executed with outside consultants. 12(m) ¶¶ 110, 112.

In March 1991, Harrison was informed that her. job was among those which had been eliminated pursuant to the reconfiguration. 12(m) ¶ 116. Soon after, Harrison attended a meeting at which two human resources employees presented her with a separation package. 12(m) ¶ 117. Harrison read the separation agreement, discussed it with two of her friends, and signed it two days later. 12(m) ¶ 120. She did not negotiate the terms of the letter nor was she encouraged to consult with an attorney. Pl.'s Uncontested Facts ¶ 8. At the time she signed it she understood that it contained promises that both she and Nutrasweet were to perform. 12(m) ¶ 121. Harrison received outplacement services, two months' redeployment pay through June 3, 1991, and severance pay from June through October 13, 1991. 12(m) ¶ 123.

Harrison first discussed the possibility that Nutrasweet had discriminated on the basis of sex in selecting people for termination in early April 1991. 12(m) ¶ 124. In addition, she knew as of May or June of 1991 that certain men were hired for positions she could have filled. 12(m) ¶ 126. Moreover, as early as 1988, Harrison believed that men received higher salaries than she, and that other employees received higher bonuses than she. 12(m) ¶¶ 128, 129. Harrison filed a charge of discrimination on September 18, 1992, after she had been contacted by counsel.

## CLAIMS

Nutrasweet contends that plaintiffs cannot maintain a cause of action because each signed a release in which they knowingly and voluntarily released Nutrasweet from "any and all" claims "arising from [their] employment [or] separation of employment" in exchange for outplacement services and, with respect to non-R & D employees, redeployment pay. Plaintiffs dispute that the releases were knowingly and voluntarily executed by Weissman and Harrison and further argue that the releases executed by Wagner, Weissman and Harrison were not supported by consideration. Moreover, plaintiffs argue that Wagner and Sorcenelli's claims arose after the releases were executed, and thus are ineffective.

■ Because the issue of consideration is the threshold inquiry in this case and determines resolution of the Motion for Summary Judgment with respect to Weissman and Harrison, the Court does not reach the issue of whether the releases were knowingly and voluntarily executed. However, even if the consideration issue did not prove determinative, the undisputed facts establish that Weissman and Harrison's execution of their releases was knowing and voluntary under either the "totality of the circumstances" approach adopted by the Second,[8] Third[9] and Fifth Circuits[10] (in the ADEA context) or the Fourth,[11] Sixth[12] and Eighth Circuit's[13]

---

8. See Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2nd Cir.), cert. denied, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989).

9. See Coventry v. United States Steel Corp., 856 F.2d 514, 521–24 (3d Cir.1988).

10. See O'Hare v. Global Natural Resources, Inc., 898 F.2d 1015 (5th Cir.1990).

11. See O'Shea v. Commerical Credit Corp., 930 F.2d 358, 361–62 (4th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 139 (1991).

12. See Runyan v. National Cash Register Corp., 787 F.2d 1039, 1043–44 (6th Cir.) (en banc) cert. denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).

13. See Pilon v. University of Minnesota, 710 F.2d 466 (8th Cir.1983).

contract interpretation approach (in the context of Title VII). *See* generally *Riley v. American Family Mut. Ins. Co.*, 881 F.2d 368 (7th Cir.1989). Both of these plaintiffs are sophisticated individuals who held significant positions at Nutrasweet, were capable of understanding what they signed, and fully capable of obtaining further information prior to their admitted voluntary execution of the disputed releases.

## ANALYSIS

Although the relevant facts of this case have required lengthy discussion, the applicable legal standards do not. Two general rules governing releases answer the questions raised by Nutrasweet's Motion for Summary Judgment.

## II. THE TENDER RULE

■ Writing for the panel, Judge Posner found in *Fleming v. United States Postal Service*, 27 F.3d 259 (7th Cir.1994),[14] that "a release can be rescinded only upon a tender of any consideration received." *Id.* at 260. In layman's terms, this rule means that a plaintiff must tender or offer to tender any consideration received in exchange for a release of liability before filing suit under Title VII.[15]

■ Although a "general principle of contract law," the rule is subject to several exceptions. The first exception can be classified as the federal law exception: "[w]hen federal law limits a class of releases, as in cases under the Federal Employers' Liability

Act, or the closely parallel Jones Act, or the Age Discrimination in Employment Act, each of which regulates releases, the common law rule requiring tender as a prerequisite to rescission may have to give way." *Id.* at 260 (citations omitted). Title VII does not fall within this exception.

■ The second exception, relevant to this case, can be classified as the "consideration defense."[16] Tender will be excused in a case where "all the plaintiff obtained in exchange for the release was something to which he was already entitled." *Id.* Tender is excused in these circumstances because a promisor's agreement to fulfill an existing legal obligation generally is not sufficient consideration to support a contract. *General Intermodal Logistics Corporation*, 748 F.2d 1071, 1074 (5th Cir.1984); *Berning v. A.G. Edwards & Sons, Inc.*, 990 F.2d 272, 275–76 (7th Cir.1993); *Fleming v. United States Postal Service*, 27 F.3d 259, 260 (7th Cir. 1994).

■ Whether intended or not, Wagner, Weissman and Harrison ("plaintiffs") have raised a consideration defense by claiming that their releases are unenforceable for lack of consideration.[17] *See Riley v. American Family Mutual Insurance Co.*, 881 F.2d 368, 371 n. 6 (7th Cir.1989) (under federal law a release of federal rights is a contract which must be supported by sufficient consideration); *Constant v. Continental Telephone Co.*, 745 F.Supp. 1374, 1384 (C.D.Ill.1990). Consideration is generally defined as an additional benefit to which one is not legally

---

**14.** In *Fleming*, the plaintiff, a former postal worker, brought suit against the Postal Service under Title VII (and other theories not relevant here), claiming that she had been discriminated against on the basis of race, sex and handicap. The Postal Service offered plaintiff a settlement of $50,000 plus attorneys fees of $25,000, which she accepted on the advice of counsel. Plaintiff cashed the settlement check, paid her attorney and then changed her mind and filed a handwritten Rule 60(b) motion, requesting the district court to set aside the release. The district court denied the motion and plaintiff appealed. On appeal, the Circuit Court found that general releases are governed by an elementary principle of contract law, namely, that "a party may not rescind a contract without returning to the other

party any consideration received under it." *Id.* at 260 (citing Illinois cases).

**15.** Although Nutrasweet has not brought *Fleming* to the court's attention, its "ratification" arguments amount to essentially the same principle.

**16.** As a practical matter, this defense must be pled to avoid dismissal.

**17.** Sorcenelli concedes that the release she signed is enforceable, because the $10,000 relocation payment she received constituted valid consideration for her release. She contends, however, that the release is enforceable only with respect to claims she knew were in existence or could have discovered upon reasonable inquiry.

entitled. *Fleming v. Postal Service*, 27 F.3d 259, 260 (7th Cir.1994). Plaintiffs claim that the WARN Act, 29 U.S.C. § 2101 *et seq.* (Supp.1993), required Nutrasweet to provide all terminated employees with redeployment pay as a matter of law. Plaintiffs also argue that the outplacement services promised by Nutrasweet in exchange for the release did not constitute an "additional benefit" because these services "would have been provided anyway." Wagner's Response to CMSJ at 4.

 Nutrasweet argues that it was not legally obligated to provide outplacement services to Wagner, Weissman or Harrison, or redeployment pay to Weissman and Harrison. The record in this case demonstrates, however, that Nutrasweet was legally obligated to provide Wagner with redeployment pay under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (Supp.1993) ("WARN Act" or "Act"), because she was an employee of the R & D group.

### A. *Weissman and Harrison*

 Weissman and Harrison's arguments fail as a matter of law. As non-moving parties, plaintiffs bear the burden of demonstrating that there is sufficient evidence in the record for a reasonable jury to find in their favor on the issue of consideration. Plaintiffs have failed to carry that burden.

Since the record is clear on the issue of redeployment pay, the court will begin its analysis with this evidence. According to Warren Grayson, Assistant General Counsel for Nutrasweet, the WARN Act required Nutrasweet to provide redeployment pay to its R & D employees because the number of terminations in R & D was higher than in other non-R & D groups. Grayson Aff. at ¶ 3. The Act did not require Nutrasweet to provide redeployment pay to other terminated employees. Grayson Aff. at ¶ 4. Grayson testified that Nutrasweet chose to offer redeployment to non-R & D employees, not to satisfy the WARN Act, but as "additional consideration in exchange for the release"

and "for reasons of perceived fairness." Grayson Aff. at ¶ 4. Grayson's testimony is uncontroverted and must therefore be taken as true for purposes of this motion.[18]

Plaintiffs' evidence, on the other hand, is not sufficiently probative. Wagner's deposition testimony tends to prove only that, at the time she heard Christine Karbowiak, a member of Nutrasweet's legal counsel, report on Nutrasweet's redeployment policy, the company intended to offer redeployment pay to all terminated employees and that Nutrasweet believed this offer would satisfy its obligations under the WARN Act. Exhibit B, Second Supp. Aff. of Catherine Wagner. Further, the Separation Process Group Status Report plaintiffs offer does not prove or tend to prove that Nutrasweet either was or believed itself to be legally obligated by the WARN Act to provide redeployment pay to all terminated employees. At most, the document proves that the Separation Process Group recommended this action to ensure compliance with the Act; it does not demonstrate what the Act required.

When read with Warren Grayson's affidavit, the evidence plaintiffs offer supports Nutrasweet's position. According to Grayson, Nutrasweet determined that only R & D employees were entitled to redeployment pay under the WARN Act. For non-R & D employees, the reconsideration offered constituted valid consideration for a release. It is undisputed that Weissman and Harrison were non-R & D employees. Therefore, Nutrasweet's offer of redeployment pay constituted valid consideration for their release and should have been tendered back to the company before plaintiffs filed this lawsuit. Plaintiffs' failure to tender back their redeployment pay now bars them from maintaining this suit against Nutrasweet and compels an order directing the entry of summary judgment in favor of Nutrasweet.

Finally, it is also worth noting that Nutrasweet's offer to provide outplacement services constituted valid consideration for plaintiffs' release. Warren Grayson testified

---

18. Although taken as true, Grayson's testimony constitutes a legal opinion and is thus probative only as to Nutrasweet's interpretation of the WARN Act, not as to what the WARN Act actual-

ly requires. Nonetheless, plaintiffs have failed to challenge Grayson's testimony in any manner which the court finds to be probative.

that two employees who terminated from non-R & D groups, Anna Richo Moore and Christine Karbowiak Vanek, were advised that if they did not sign the release they would not receive "redeployment" and outplacement benefits. According to Grayson, neither individual signed the release and neither received "redeployment" or outplacement benefits. This testimony is material and, because it is also uncontroverted, it is determinative on the issue of outplacement benefits. Plaintiff's evidence is not sufficiently probative. See Exhibit I and J, Pl.'s Mem. In Opposition (Wagner deposition testimony and an Outplacement Services Document).

### B. Wagner

■ Wagner stands in a different position than the purported class for several reasons. First, the redeployment pay she received did not constitute consideration for her release because she was entitled to it under the WARN Act. Second, although the outplacement services she received for her March 25, 1991, release constituted valid consideration, as she understood they did, it is not clear from the record whether a "tender" of the benefits received from these services is possible. Third, the retention period and corresponding pay Wagner received not only constitute a separate agreement, i.e., the "Retention Agreement," but are also part of the March 25th "separation package." Nutrasweet argues that this retention pay constitutes part of the consideration Wagner received in exchange for her release. Wagner does not offer an argument in response.

Nutrasweet was not legally obligated to offer Wagner a retention period and retention pay. Thus, this "Retention Agreement" or "offer" constitutes consideration. The only question is whether it constitutes consideration for Wagner's release.

The undisputed facts indicate that the Retention Agreement did constitute consideration for the release. When Wagner received the Separation Letter dated March 25,

1991, the "Retention Agreement" was attached to it. Although the two agreements were contained in separate documents, each referred to the other. Further, the letters informed Wagner that her redeployment pay, outplacement services and severance benefits were affected by the dates of her employment. Thus, it is reasonable to infer that when Wagner signed the release contained in the Separation Agreement, she knew that the retention period extended the dates of her separation benefits and thus added to the total amount of benefits she received as part of the Separation Agreement.

After careful consideration, the Court finds that the timing of the two offers, the fact that Nutrasweet attached the "Retention Agreement" to the "Separation Agreement," and the reference to the retention period in the March 25, 1991, Separation Letter make it indisputable that the Retention Agreement was offered as consideration for Wagner's release. Thus, according to the tender rule, these retention payments should have been tendered to Nutrasweet before Wagner brought suit. Her failure to tender or offer to tender this consideration bars her from raising any claims covered by the March 25, 1991 release.[19]

### III. THE PROSPECTIVE WAIVER RULE

■ Prospective claims not yet in existence or "within the contemplation of the parties" cannot be waived by signing a general release. See Riley v. American Family Mutual Insurance Co., 881 F.2d 368, 371 n. 6 (7th Cir.1989) ("prospective waivers are unenforceable"); Fair v. International Flavors & Fragrances, 905 F.2d 1114, 1115 (7th Cir. 1990) (noting that "courts should not recognize general releases of claims not known or contemplated by the parties at the time of the release"); Goodman v. Epstein, 582 F.2d 388, 402 n. 42 (7th Cir.1978) ("any attempt to release a claim in futuro is invalid"). See also International Insurance Co. v. Sargent & Lundy, 242 Ill.App.3d 614, 609 N.E.2d 842,

---

19. Even if the retention pay did not constitute valid consideration, it is undisputed that Nutrasweet's offer of outplacement services did. Thus, Wagner would be obligated to at least offer to

tender back the value of these services before bringing suit under the auspices of Fleming, 27 F.3d 259 (7th Cir.1994).

182 Ill.Dec. 308 (1st Dist.1993) (general releases apply only to claims in existence at the time the release is executed; claims arising subsequent to execution are discharged only by a "clear expression of intent to that effect"); *Chubb v. Amax Coal Co., Inc.*, 125 Ill.App.3d 682, 686, 80 Ill.Dec. 917, 466 N.E.2d 369 (5th Dist.1984) (same). The bar against prospective waivers, however, is not absolute.

■ Claims contemplated, but not yet in existence, at the time a release is executed are waived. *Id. Fair v. International,* 905 F.2d 1114, 1115 (7th Cir.1990) (pension claim arising two years after execution of release barred because parties "should have been aware of any impact the Settlement Agreement might have upon [plaintiffs'] impending retirement benefits"); *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 568 F.Supp. 1096 (N.D.Ill.1983) (Shadur, J.) (although prospective nature of antitrust claims required court to rescind release for reasons of public policy, Judge Shadur noted that the release if "read fairly" purported to discharge defendant from claims asserted because they were "within the contemplation" of parties when release executed). Claims of which a signing party has actual knowledge or that the party could have discovered upon reasonable inquiry are also barred. *E.g., Fair,* 905 F.2d at 1115 (7th Cir.1990); *Oberweis Dairy,* 568 F.Supp. at 1101 (N.D.Ill. 1983), *citing Goodman v. Epstein,* 582 F.2d 388, 402–04 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). *See also Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1342 (N.D.Ill. 1985). Application of these rules results in judgment against Sorcenelli but not against Wagner.

### A. Sorcenelli

■ Sorcenelli concedes that the release she signed on April 30, 1991, is valid and enforceable. She contends, however, that the release is not enforceable against claims which she could not discover upon reasonable

inquiry, even if these claims arose before she signed the release. Specifically, Sorcenelli claims that she did not know her successor Mike Vinitsky received a larger MIP award in 1990 until after she signed her release.

■ The law clearly states that unknown claims are those which are in existence and can be discovered upon reasonable inquiry, or claims which are contemplated by the parties executing the release, even if they do not yet exist. The undisputed facts demonstrate that Sorcenelli's claim existed and was within her contemplation at the time she signed the release.

Sorcenelli knew that she did not receive the same compensation as other employees at her level in her group, and that Mike Vinitsky, her comparative and ultimate successor, earned approximately $20,000 more than she did. Further, Sorcenelli complained to her supervisors, on more than one occasion, about the amount of her 1991 MIP Award in relation to other employees in her department. The fact that Sorcenelli did not have access to the exact amount of Vinitsky's award prior to her termination does not change the equation. Had Sorcenelli refused to sign the release and brought suit instead, legal methods of discovery could have uncovered this information. Thus, Sorcenelli cannot contend that the claim she now alleges, although in existence at the time she signed the release, could not be discovered upon reasonable inquiry.[20] Accordingly, the court will direct the entry of summary judgment against Sorcenelli in favor of Nutrasweet.

### B. Wagner

■ Although Sorcenelli's claim cannot be considered prospective, Wagner's claims can. Several reasons support this distinction.

■ First, the claims Wagner alleges did not arise until after she executed the March 25, 1991 release. Claims not in existence at the time a release is executed cannot be waived unless they are within the contempla-

---

20. Although the court's research has not uncovered any cases where a claim "could not be discovered upon reasonable inquiry," it seems fair to say that Sorcenelli's claim is not equiva-

lent to a latent disease like AIDS which cannot be discovered until years after the moment of infection.

tion of the parties. Second, the record does not indicate whether Wagner had a basis for believing that Nutrasweet engaged in discriminatory hiring and firing before she signed her release. Wagner also apparently never complained to anyone (unlike Sorcenelli) regarding compensation or promotional opportunities. Thus, there is no basis for a reasonable jury or the court to find that Wagner contemplated suing Nutrasweet for sex discrimination at the time she signed her release.

Finally, Wagner (unlike Sorcenelli) remained an employee of Nutrasweet after execution of her release. The March 25, 1991 release, however, did not purport to cover the claims which arose during her retention period. Nutrasweet apparently recognized this fact because it offered Wagner a second release dated August 1, 1991. Exhibit I, Nutrasweet CMSJ. Although the August 1, 1991, Separation Letter is framed as a "reconfirmation" of Wagner's previous Separation Agreement and release, functioning only to clarify the dates of her departure and the payment of benefits already agreed to on March 25, 1991, the August 1st letter contains a second release, with identical language, which Wagner was asked to sign. In the court's judgment, Wagner's refusal to sign the second release gives her the right to bring suit against Nutrasweet for any claims arising from March 30, 1991, through the last day of her employment, October 5, 1991. Accordingly, summary judgment will be denied with respect to Wagner's claims regarding the hiring of Mike Vinitsky in April 1991 and the alleged promotion of Wayne Tompkins in July/August 1991.

## IV. CLASS CERTIFICATION

The entry of judgment against the purported class members' individual claims renders plaintiffs' Motion for Class Certification somewhat moot. *Cf. Chambers v. American Trans Air*, 17 F.3d 998 (7th Cir.1994) (circuit court found motion for class certification moot where district court entered summary judgment on individual claims of class representative). Nonetheless, the court finds it necessary to address this motion on the merits, given the fact that two of Wagner's individual claims survive summary judgment, thereby leaving open the possibility of future class actions.

▮▮▮ The court finds that Plaintiffs' Motion for Class Certification must be denied, because it does not meet at least one of Rule 23(a)'s four conditions, namely, typicality of claims and defenses.[21] *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369-70, 72 L.Ed.2d 740 (1982) (to be certified, Title VII classes must meet with particularity each of the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure). Typicality is met where the representative plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). As can be seen from the court's discussion of Nutrasweet's Motion for Summary Judgment, the claims alleged (and the releases executed) by the purported class are not typical, because they require application of several legal theories and individual analysis of each release and claim. This finding holds true even though plaintiffs' claims arise from the same event or practice, namely, Nutrasweet's 1991 reconfiguration and the issuance of its general release.

## CONCLUSION

IT IS THEREFORE ORDERED that Nutrasweet's Consolidated Motion for Sum-

---

21. Furthermore, even if the numerosity and adequacy of representation requirements are satisfied, Rule 23 would still require the potential class to satisfy one provision of Rule 23(b). *Rosario*, 963 F.2d at 1017. Similarly, there is a serious question whether the plaintiffs have met their burden of showing commonality. The commonality requirement is satisfied when the claims alleged by the class share a single issue of law, *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 622 (N.D.Ill.1989) (Shadur, J.); *Armstrong v. Chicago Park District*, 117 F.R.D. 623, 628 (N.D.Ill.1987) (Shadur, J.), or arise out of "a common nucleus of operative fact." *Rosario*, 963 F.2d at 1018. "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017. Nonetheless, the class as a whole has not shown with particularity that they share at least one issue of law even though several members raise similar claims.

mary Judgment (# 70–1) is GRANTED IN PART AND DENIED IN PART. The Clerk of the Court is directed enter judgment in favor of Nutrasweet and against Anne Marie Sorcenelli, Sarah Baldwin Weissman and Jenny Bridges Cox Harrison on all counts of the Amended Complaint. The Clerk is further directed to enter judgment in favor of Nutrasweet and against Catherine Wagner on all claims alleged in the Complaint which arose before March 25, 1991. Nutrasweet's Motion for summary judgment is denied, however, with respect to Wagner's claims arising after March 30, 1991, specifically, the claims related to Mike Vinitsky and Wayne Tompkins. IT IS FURTHER ORDERED that Plaintiffs' Motion for Class Certification (# 59–1, originally 13–1) is DENIED and Motion to Compel (# 25–1)[22] is MOOT.

To expedite pretrial proceedings, Plaintiff is directed to file an amended complaint which sets forth the remaining claims with more specificity within fourteen (14) days from the date of this order. Defendant will be given fourteen (14) days to answer this amended complaint and this matter will be set for status on October 28, 1994, at 9:30 a.m., for the express purpose of setting an appropriate discovery and trial schedule for the remaining claims involved in this case.

## *MEMORANDUM OPINION AND ORDER ON RECONSIDERATION*

Plaintiff, Catherine Wagner ("Wagner"), moves under Fed.R.Civ.P. 59 for clarification and partial reconsideration of this court's Memorandum Opinion and Order dated October 13, 1994.[1] The relevant facts of this case are set forth in the Memorandum Opinion. For the sake of judicial economy, we assume familiarity with the facts and do not repeat them here.

▮▮▮ Although motions for reconsideration are not specifically authorized by the

Federal Rules of Civil Procedure, the Seventh Circuit and this district apply Rule 59(e) standards to these motions. *See Sutliff, Inc. v. Donovan Cos., Inc.,* 727 F.2d 648, 652 (7th Cir.1984); *see also Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 n. 9 (N.D.Ill.1988).

The Seventh Circuit has repeatedly cautioned that:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The nonmovant has an affirmative duty to come forward to meet a properly supported motion for summary judgment.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987), *quoting Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985). More recently, the Seventh Circuit observed that a motion for reconsideration performs a valuable function where:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion for reconsideration would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.

---

**22.** Plaintiff's Motion to Compel Discovery (# 25–1) is also moot. On August 31, 1992, by Plaintiff's agreement, the court deferred ruling on the Motion to Compel pending a ruling on the Motion for Class Certification. Since the Motion to Compel relates solely to the potential class of plaintiffs, it is rendered moot by the court's rul-

ing on Nutrasweet's Motion for Summary Judgment.

**1.** This case was originally assigned to Judge Holderman's calendar. By order of the Executive Committee, it was reassigned to this court's calendar effective May 25, 1994.

1990), *quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 191 (E.D.Va.1983). *Bank of Waunakee* arguably adds grist to the court's discretionary mill in considering a Rule 59(e) motion. However, it remains true that "motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments," *In re Oil Spill by Amoco Cadiz,* 794 F.Supp. 261, 267 (N.D.Ill. 1992), *aff'd* 4 F.3d 997 (7th Cir.1993), and such motions are not appropriate vehicles for introducing evidence that could have been produced prior to the entry of judgment or for tendering new legal theories for the first time. *Publishers Resource,* 762 F.2d at 561.

Wagner utilizes this motion to argue that the Court's Memorandum Opinion of October 13, 1994, did not "clearly and completely resolve the parties' respective motions for summary judgment and class certification." Wagner's motion is denied for the following reasons.

With respect to the motion for summary judgment, Wagner contends that the court resolved her "termination claim," but did not consider or resolve her "compensation and benefits claims." After further review of the motions for summary judgment, it is clear that Wagner did not make any independent claims for compensation and benefits apart from her assertions regarding Mike Vinitsky and Wayne Tompkins.[2] Nonetheless, the court noted that "compensation claims arising after March 25, 1991, survive summary judgment." Mem.Op. at 3 n. 4. The operative facts also included descriptions of the compensation and benefits differentials between the named parties and the Nutrasweet employees named in the record. Thus, the court's Memorandum Opinion does not preclude Wagner from attempting to allege and prove that Nutrasweet discriminated against her in terms of compensation and benefits after March 25, 1991.

Wagner next claims that the Court "erroneously denied class certification of the compensation and benefits discrimination class." Motion at 4. The court's ruling on the class certification motion is not erroneous. Wagner has failed to persuade this court that she meets the typicality requirements of Rule 23. The proposed class of female managers does not share claims which are typical, because the court would need to determine whether each potential class member signed a valid release of all claims against Nutrasweet during the relevant periods before reaching the merits of each compensation and benefits dispute. The need for a particularized inquiry defeats Wagner's Motion for Class Certification. *General Tel. Co. v. Falcon,* 457 U.S. 147, 158, 102 S.Ct. 2364, 2370–71, 72 L.Ed.2d 740 (1982) (plaintiff must demonstrate with particularity that she suffered the same type of injury as the aggrieved class members); *Hall v. Burger King Corp.,* 1992–2 Trade Cas. (CCH) ¶ 70,-042 at 69,149, 1992 WL 372354 (Dec. 1, 1992) ("questions of whether a release has been executed, whether it is valid and whether it covers the subject matter of this lawsuit would require an analysis of each releasor's circumstances"), *quoting Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443, 451 (M.D.Ga. 1975); *Abercrombie v. Lum's, Inc.,* 345 F.Supp. 387, 393 (S.D.Fla.1972) (same); *Glass v. Rock Island Corp.,* 788 F.2d 450, 455 (7th Cir.1986) ("whether a plaintiff knowingly and voluntarily agreed to settle his Title VII claims is a question of fact"). Furthermore, the court's analysis of the Motion for Class Certification is not affected or changed by further refinement of or addition to Wagner's compensation and benefits claims.[3]

## CONCLUSION

The ruling issued on October 13, 1994, is, in the court's considered judgment, the cor-

---

**2.** The court notes that Wagner's Complaint is very broad and does not allege discrete violations of discrimination regarding compensation and benefits. Wagner also "limited" her arguments in response to the latest Motion for Summary Judgment to Nutrasweet's decisions to hire Mike Vinitsky and allegedly promote Wayne Tompkins. Although the court's October 13, 1994, ruling does not preclude Wagner from identifying further acts of discrimination after March 25, 1994,

in an amended complaint, the court appropriately limited its analysis on summary judgment to the arguments presented by the parties.

**3.** As discussed above, the court's reference to Wagner's "two individual claims" is not preclusive. Rather, these claims were referenced because they were the only claims Wagner raised in response to the latest Motion for Summary Judgment.

rect one. THEREFORE, the Clerk of the Court is directed to deny Plaintiff's Rule 59(e) Motion for Clarification and Reconsideration.